STATE OF MINNESOTA

IN SUPREME COURT

A12-2266

Court of Appeals                                                      Wright, J.
                                              Dissenting, Lillehaug, Page, JJ.
State of Minnesota,                                 Took no part, Anderson, J.

                  Respondent,

vs.
                                                      Filed:  March 11, 2015
David Ford McMurray,                             Office of Appellate Courts

                  Appellant.
                  _____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael K. Junge, McLeod County Attorney, Elizabeth Smith, Assistant McLeod County Attorney, Glencoe, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

Cort C. Holten, Jeffrey D. Bores, Chestnut Cambronne PA, Minneapolis, Minnesota, for amicus curiae Minnesota Police and Peace Officers Association Legal Defense Fund.

_____

S Y L L A B U S

In the context of a warrantless search of garbage set out for collection in an area accessible to the public, there is no principled basis for interpreting Article I, Section 10, of the Minnesota Constitution to provide greater protection than the Fourth Amendment to the United States Constitution.

Affirmed.

1

O P I N I O N

WRIGHT, Justice.

In this case, we consider whether there is a principled basis for interpreting Article I, Section 10, of the Minnesota Constitution to require greater protection than the Fourth Amendment to the United States Constitution in the context of a warrantless search of garbage set out for collection in an area accessible to the public. Applying the principles articulated in *Kahn v. Griffin*, 701 N.W.2d 815 (Minn. 2005), to the facts of this case, we do not have a "clear and strong conviction" that there is a principled basis for interpreting Article I, Section 10, of the Minnesota Constitution to require greater protection than the Fourth Amendment to the United States Constitution. We therefore affirm.

On January 25, 2012, a mandated reporter informed the Hutchinson police that appellant David Ford McMurray's daughter saw her mother with "a pipe believed to be used for drugs." Officer Erlandson, an investigator with Hutchinson Police Services and a member of the Southwest Metro Drug Task Force, checked police records and learned that both McMurray and his wife previously had been arrested for controlled substance violations.

Officer Erlandson contacted the commercial truck driver who collects McMurray's garbage and sought the driver's assistance in securing the garbage that McMurray placed at the curb for collection. On February 2, 2012, Officer Erlandson observed the driver pick up the garbage from the curb outside McMurray's home and immediately thereafter met the driver in a predetermined location to retrieve the

2

garbage. When Officer Erlandson searched the garbage, he found several plastic bags containing white residue, which later tested positive as methamphetamine. The garbage also contained drug paraphernalia and documents belonging to McMurray and his wife.

The next day, based on the information police received from the mandated reporter and the warrantless search of McMurray's garbage, Officer Erlandson obtained a warrant to search McMurray's home. Police executed the search warrant and found McMurray with two other people in an upstairs bedroom. While searching the bedroom, police found, inside a clothes basket, plastic bags containing a "crystal like substance" and a letter addressed to McMurray. A laboratory test confirmed that one of the plastic bags contained 3.3 grams of methamphetamine.

McMurray was charged with third-degree possession of a controlled substance. Minn. Stat. § 152.023, subds. 2(a)(1), 3(b) (2014). McMurray moved to suppress the evidence seized from his home. In support of the motion to suppress, McMurray argued that the warrantless search of his garbage violated Article I, Section 10, of the Minnesota Constitution, which provides, "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized." He further argued that without the evidence found in his garbage, the application for a warrant to search his home was not supported by probable cause, and that the search of his home was, therefore, unconstitutional. The State urged the district court to deny the suppression motion, citing *State v. Oquist*, 327 N.W.2d 587, 591

3

(Minn. 1982), in which we held "the defendant had no reasonable expectation of privacy with respect to the contents of the plastic bags placed in or near his open garbage can" when the contents were examined "without trespassing on the defendant's premises." The district court denied the motion to suppress, concluding that *Oquist* was controlling.

McMurray waived his right to a jury trial and submitted his case to the district court on stipulated facts under Minn. R. Crim. P.26.01, subd. 3. The district court found McMurray guilty of third-degree possession of a controlled substance and imposed a 24-month sentence, which is the mandatory minimum sentence for a person previously convicted of a felony controlled substance crime. *See* Minn. Stat. § 152.023, subd. 3(b).

McMurray appealed to the court of appeals, arguing among other grounds that the district court committed reversible error by denying his motion to suppress. The court of appeals affirmed, stating that "[f]ollowing United States Supreme Court precedent, Minnesota courts have consistently held that garbage left on a curb or adjacent to an alley that is seized in a routine curbside pickup does not constitute an illegal search." *State v. McMurray*, No. A12-2266, 2013 WL 5021206, at *2 (Minn. App. Sept. 16, 2013).

We granted McMurray's petition for further review on the issue of whether Article I, Section 10, of the Minnesota Constitution requires greater protection than the Fourth Amendment to the United States Constitution in the context of a warrantless search of garbage set out for collection in an area accessible to the public.

I.

In *California v. Greenwood*, 486 U.S. 35 (1988), the United States Supreme Court concluded that an individual does not have a reasonable expectation of privacy in garbage

4

left at the curb. *Id.* at 39-41. Consequently, a warrantless search of such garbage does not violate the Fourth Amendment to the United States Constitution. *Id.* Acknowledging *Greenwood*, McMurray concedes that the Fourth Amendment does not prohibit warrantless searches of garbage set out for collection. Despite the fact that the language of Article I, Section 10, of the Minnesota Constitution is substantially similar to the language of the Fourth Amendment,[1] McMurray asks us to interpret Article I, Section 10, to provide greater protection than the Fourth Amendment because in his view the United States Supreme Court's reasoning in *Greenwood* is not persuasive.[2] To support his argument, McMurray relies heavily on the *Greenwood* dissent and the decisions of a minority of other state courts.[3]

---

[1] We have said that Article I, Section 10, and the Fourth Amendment are "textually identical," *State v. Carter*, 697 N.W.2d 199, 209 (Minn. 2005), although there are some differences in punctuation between the two provisions.

[2] The dissent's discussion of the reasonable articulable suspicion standard is ill conceived for at least two reasons. First, application of this legal standard was not raised below and, therefore, is not properly before us. It is well settled that "[a] reviewing court must generally consider 'only those issues that the record shows were presented and considered by the trial court in deciding the matter before it.'" *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quoting *Thayer v. Am. Fin. Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn. 1982)). A party may not "obtain review by raising the same general issue litigated below but under a different theory." *Id.* at 582. Second, neither party has advocated that we adopt the reasonable articulable suspicion standard, which only a minority of states have adopted. Prudently, we decline to offer an opinion on a matter that was not properly raised or litigated below.

[3] In the nearly 30 years since the United States Supreme Court decided *Greenwood*, most state supreme courts that have addressed the issue have followed the reasoning of *Greenwood* when interpreting their state constitutions. *See, e.g.*, *Rikard v. State*, 123 S.W.3d 114, 119-20 (Ark. 2003); *People v. Hillman*, 834 P.2d 1271, 1277-78 (Colo. 1992); *State v. DeFusco*, 620 A.2d 746, 751-53 (Conn. 1993); *State v. Donato*, 20 P.3d 5,

(Footnote continued on next page.)

As a separate source of rights, the Minnesota Constitution may under certain circumstances provide greater protection than the United States Constitution. *Kahn*, 701 N.W.2d at 823-24. Yet when independently interpreting the Minnesota Constitution, we will not reject a United States Supreme Court interpretation of identical or substantially similar language "merely because one prefers the opposite result." *Women of the State of Minn. by Doe v. Gomez*, 542 N.W.2d 17, 30 (Minn. 1995). Our precedent establishes that we approach the responsibility of interpreting identical or substantially similar language with restraint. *Kahn*, 701 N.W.2d at 828. As we follow the general principle of "favoring uniformity" with the United States Constitution, we decline to "lightly reject" a United States Supreme Court interpretation of "identical or substantially similar language." *Id.* at 824. Rather, when a federal constitutional provision has the same or substantially similar language and the United States Supreme Court has

(Footnote continued from previous page.)
10 (Idaho 2001); *State v. Kimberlin*, 984 P.2d 141, 145-46 (Kan. 1999); *Commonwealth v. Pratt*, 555 N.E.2d 559, 567-68 (Mass. 1990); *State v. Schmalz*, 744 N.W.2d 734, 741-42 (N.D. 2008); *Barekman v. State*, 200 P.3d 802, 806-07 (Wyo. 2009). These courts generally have agreed with the United States Supreme Court that people knowingly expose their garbage to the public when they set it out for collection. *See, e.g.*, *Rikard*, 123 S.W.3d at 119-20; *Pratt*, 555 N.E.2d at 567. The rationale in these cases is that, once garbage has been set at the curb, it is in an area accessible to the public, which defeats any expectation of privacy that might have existed. There can be no expectation of privacy in that which is plainly visible to the public. *Hillman*, 834 P.2d at 1277. Furthermore, it is widely known that scavengers and animals often rummage through garbage, and the fact that other people are known to look through trash placed at the curb defeats any expectation that the police will refrain from doing so. *See DeFusco*, 620 A.2d at 752. Some courts also have suggested that garbage set out for collection is abandoned, asserting that "the defendant can be said to have abandoned his privacy interests in his garbage through the placement of his trash bags at the curb for collection." *Pratt*, 555 N.E.2d at 567; *see also State v. A Blue in Color, 1993 Chevrolet Pickup*, 116 P.3d 800, 804 (Mont. 2005).

interpreted that language, we will not construe the Minnesota Constitution as granting greater protection for individual rights "unless there is a principled basis to do so." *Id.* (citing *State v. Harris*, 590 N.W.2d 90, 97-98 (Minn. 1999)).

In *Kahn*, we identified a nonexclusive list of factors that may be considered in determining whether there is a principled basis for interpreting the Minnesota Constitution to provide greater protection than the United States Constitution:

> (1) the text of the state Constitution, (2) the history of the state constitutional provision, (3) relevant state case law, (4) the text of any counterpart in the U.S. Constitution, (5) related federal precedent and relevant case law from other states that have addressed identical or substantially similar constitutional language, (6) policy considerations, including unique, distinct, or peculiar issues of state and local concern, and (7) the applicability of the foregoing factors within the context of the modern scheme of state jurisprudence.

*Id.* at 829. When the text of our state constitution is materially identical to the federal constitution, as it is here, we have construed the Minnesota Constitution to provide greater protection than the United States Constitution: (1) when the United States Supreme Court " 'has made a sharp or radical departure from its previous decisions' and we 'discern no persuasive reason to follow such a departure' "; (2) when the Court has "retrenched on a Bill of Rights issue"; or (3) when the Court precedent " 'does not adequately protect our citizens' basic rights and liberties.' " *Rew v. Bergstrom*, 845 N.W.2d 764, 795 (Minn. 2014) (quoting *Kahn*, 701 N.W.2d at 828).

In light of the well-established principles articulated in *Kahn*, the issue presented in this case is not whether the reasoning of the Supreme Court in *Greenwood* is persuasive. Rather, the issue is whether we have a "clear and strong conviction" that

7

there is a "principled basis" for us to interpret Article I, Section 10, of the Minnesota Constitution to provide greater protection from warrantless searches of garbage set out for collection than the Fourth Amendment to the United States Constitution. We therefore consider whether the legal issue in this case presents one of the three situations articulated in *Kahn*, 701 N.W.2d at 828.

We first consider whether the United States Supreme Court's decision in *Greenwood* marked a sharp or radical departure from its Fourth Amendment precedent. At the time of Greenwood's appeal, the United States Supreme Court's Fourth Amendment precedent had established the following two principles. First, a person could invoke the protections of the Fourth Amendment if the person had a reasonable expectation of privacy in the area or items searched. *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring).[4] Second, what a person knowingly exposed to the public, even in the person's own home or office, was not a subject of Fourth Amendment protection. *California v. Ciraolo*, 476 U.S. 207, 213 (1986) (quoting *Katz*, 389 U.S. at 351). Applying these two principles to the facts in *Greenwood*, the United States Supreme Court concluded that a warrantless search of garbage is permitted under the Fourth Amendment because a person has no reasonable expectation of privacy in garbage

---

[4] The United States Supreme Court recently clarified that "[t]he *Katz* reasonable-expectations test 'has been *added to*, not *substituted for*' the traditional property-based understanding of the Fourth Amendment." *Florida v. Jardines*, ___ U.S. ___, 133 S. Ct. 1409, 1417 (2013) (quoting *United States v. Jones*, ___ U.S. ___, 132 S. Ct. 945, 952 (2012)). Because the police procured the garbage without trespassing on the curtilage of McMurray's premises, the traditional property-based understanding of the Fourth Amendment is not at issue in this case.

8

set out for collection. 486 U.S. at 40-41. The *Greenwood* Court reasoned that it is common knowledge that members of the public rummage through plastic garbage bags placed at the side of a public street. *Id*. at 40. Furthermore, garbage is placed at the curb with the expectation that a third-party trash collector will take it, and the trash collector could sort through the garbage or permit others to do so. *Id.* The *Greenwood* Court concluded that it is not reasonable to expect the contents of garbage bags placed on the side of a public street for collection to remain private. *Id.* at 40-41. Therefore, garbage bags placed at curbside for collection are outside the scope of Fourth Amendment protections and may be searched without a warrant and without reasonable suspicion of criminal activity.

Based on our review of the *Greenwood* decision, we conclude that it did not constitute a "sharp or radical departure" from the United States Supreme Court's previous approach to the law. *See Kahn*, 701 N.W.2d at 828. Rather, it simply applied the principles previously articulated in *Katz* and *Ciraolo* in a slightly different context. Moreover, the analysis adopted in *Greenwood* was consistent with the decisions of a vast majority of state courts, including our decision applying the Fourth Amendment in *State v. Oquist*, 327 N.W.2d 587, 591 (Minn. 1982).

We next consider whether the United States Supreme Court's decision in *Greenwood* retrenched on a Bill of Rights issue. The relevant inquiry regarding retrenchment is not whether the United States Supreme Court has retrenched on Bill of Rights issues *generally* but whether it has retrenched on the specific Bill of Rights issue

9

at hand—here, protection against warrantless searches.[5] *See, e.g.*, *Rew*, 845 N.W.2d at 795 (interpreting the question of retrenchment as referring only to the specific Bill of Rights issue at hand). We conclude that the *Greenwood* decision did not retrench on the protection against warrantless searches. Far from retrenching on the existing protections against warrantless searches, the analysis adopted in *Greenwood* was consistent with the decisions of a vast majority of state courts, including our decision in *Oquist*, 327 N.W.2d at 591. Moreover, McMurray has not identified any court or commentator that has described *Greenwood* as a "retrenchment" on the protections against warrantless searches.[6]

Finally, we consider whether the *Greenwood* rule permitting warrantless searches of garbage set out for collection fails to adequately protect a basic right or liberty of the citizens of Minnesota. *See Kahn*, 701 N.W.2d at 828. This inquiry requires more than a conviction that we would have decided the issue differently in the first instance. *See State v. Wiegand*, 645 N.W.2d 125, 133 n.8 (Minn. 2002) (refusing to interpret the

---

[5]     We are mindful that the United States Supreme Court's recent decisions reflect an expansion of, rather than a retrenchment on, the protection against warrantless searches. *See, e.g.*, *Jones*, ___ U.S. ___, 132 S. Ct. 945 (holding that attaching a GPS device to a vehicle and using the device to monitor the vehicle's movements on public streets is a search within the meaning of the Fourth Amendment).

[6]     One commentator has argued that, since the United States Supreme Court announced the so-called container doctrine in the 1970s, it has eroded the protections of that doctrine by expanding the circumstances in which law enforcement may search a closed container without a warrant. *See* Cynthia Lee, *Package Bombs, Footlockers, and Laptops: What the Disappearing Container Doctrine Can Tell Us About the Fourth Amendment*, 100 J. Crim. L. & Criminology 1403 (2010). The commentator, however, does not include *Greenwood* in her discussion of that erosion, much less describe *Greenwood* as a "retrenchment" on the protections against warrantless searches.

10

Minnesota Constitution more broadly than the United States Constitution with regard to dog sniffs and stating that "we do not resort to the Minnesota Constitution whenever we simply would have decided the matter differently"). Instead, our inquiry considers whether there is a "unique, distinct, or peculiar issue[] of state and local concern" that requires protection. *Kahn*, 701 N.W.2d at 829. For example, in *Friedman v. Commissioner of Public Safety*, this court observed that "Minnesota has a long tradition of assuring the right to counsel." 473 N.W.2d 828, 831 (Minn. 1991). In light of this tradition, *inter alia*, we held in *Friedman* that the Minnesota Constitution gives a motorist a limited right to consult an attorney before deciding whether to submit to chemical testing for blood alcohol. *Id.* at 835.

Unlike the traditional protection of the right to counsel recognized in *Friedman*, Minnesota does not have a long tradition of protecting garbage set out for collection from a warrantless search. Instead, during the last 32 years, we have repeatedly held that garbage set out for collection is not protected by the Fourth Amendment and may be searched without a warrant. *See State v. Dreyer*, 345 N.W.2d 249, 250 (Minn. 1984); *Oquist*, 327 N.W.2d at 591; *see also State v. Krech*, 403 N.W.2d 634, 636 (Minn. 1987) (stating that garbage placed in a dumpster at a duplex was "abandoned property in which defendant no longer had a reasonable expectation of privacy"); *cf. State v. Goebel*, 654 N.W.2d 700, 703-04 (Minn. App. 2002).

In sum, we conclude that *Greenwood* was not a sharp or radical departure from United States Supreme Court precedent, did not retrench on a Bill of Rights issue, and does not fail to adequately protect a unique, distinct, or peculiar issue of state and local

11

concern.  We therefore conclude there is no principled basis for us to interpret Article I, Section 10, of the Minnesota Constitution to require greater protection than the Fourth Amendment to the United States Constitution in the context of a warrantless search of garbage set out for collection in an area accessible to the public.

## II.

The dissent would interpret Article I, Section 10, to require greater protection than the Fourth Amendment for three reasons.  First, the dissent is persuaded by the arguments put forward by Justice Brennan in his dissent in *Greenwood*.  Second, the dissent contends that changes in the content of garbage and in city ordinances relating to garbage disposal and container design have strengthened the expectation of privacy with respect to garbage.  Third, a number of other state courts have interpreted their state constitutions to provide greater protection than the Fourth Amendment to the United States Constitution in the context of a warrantless search of garbage set out for collection in an area accessible to the public.  For the reasons that follow, we are not persuaded by the dissent's analysis.

In his *Greenwood* dissent, Justice Brennan argued that all Americans retain a reasonable expectation of privacy in garbage set out for collection because "[a] single bag of trash testifies eloquently to the eating, reading and recreational habits of the person who produced it."  486 U.S. at 50 (Brennan, J., dissenting).  He equated a search of trash with a search of a bedroom or desk drawers because it "can relate intimate details about sexual practices, health, and personal hygiene" as well as a person's "financial and

12

professional status, political affiliations and inclinations, private thoughts, personal relationships, and romantic interests." *Id.* Justice Brennan also emphasized:

> [M]any municipalities, whether for reasons of privacy, sanitation, or both, reinforce confidence on the integrity of sealed trash containers by 'prohibit[ing] anyone, except authorized employees of the Town . . . , to rummage into, pick up, collect, move or otherwise interfere with articles or materials placed on . . . any public street for collection.'

*Id.* at 52 (alteration in original) (quoting *United States v. Dzialak*, 441 F.2d 212, 215 (2d Cir. 1971)). He further emphasized that many "county ordinance[s] command[]" that a person set his or her garbage out on the curb, and therefore the act of placing garbage on the curb does not "amount to a relinquishment of a privacy expectation in it." *Id.* at 54-55.

The dissent's analysis mirrors Justice Brennan's analysis. For example, the dissent contends that "[h]ousehold waste contains a great deal of personal information that most of us expect will remain private." *Infra* at D-4. The dissent also contends that municipal ordinances that prohibit the scavenging of recyclable materials and regulate the collection of garbage support the reasonableness of an expectation that household garbage will remain private from unwarranted inspection by the government. *Infra* at D-8 to D-9. In effect, the dissent contends that Article I, Section 10, of the Minnesota Constitution should be interpreted to require greater protection than the Fourth Amendment because it finds the arguments of the dissent in *Greenwood* to be persuasive. However, under the well-established principles articulated in *Kahn*, we do not construe the Minnesota Constitution to provide greater protection "merely because we want to bring about a different result." *Kahn*, 701 N.W.2d at 824.

13

The dissent next argues that today's garbage is "not your grandfather's garbage" because "[v]astly more household waste is being recycled" and garbage "may now contain digital material such as disks, chips, and flash drives." *Infra* at D-5 to D-6. Because the introduction of digital media has been accompanied by corresponding changes in the way we dispose of sensitive items and information,[7] we are unpersuaded by the dissent's argument. If, as the dissent contends, the nature of household waste has changed, as well as the "dented metal garbage cans" that were once set out at the curb, *infra* at D-8, so too have Minnesotans' disposal habits. A misplaced bank statement, an improperly discarded hard drive, or poor judgment when interacting with others via social media leaves an individual vulnerable to consequences ranging from embarrassment to identity theft and fraud. We do not minimize that certain negative consequences have arisen from technological developments, but we also consider the practical reality when determining whether changed circumstances justify a change in the law. Minnesotans are well aware of potential threats to their privacy and security and have prudently altered their conduct in response.

Finally, the dissent cites to a handful of state supreme courts, each relying on its state constitution, that have concluded that people have a reasonable expectation of

---

[7] There are many resources available to individuals that explain how to protect their privacy. *See, e.g.*, Office of Minnesota Attorney General Lori Swanson, *Guarding Your Privacy* (2013), *available at* http://www.ag.state.mn.us/brochures/pubGuarding YourPrivacy.pdf; *Consumer Information: How to Keep Your Personal Information Secure*, Fed. Trade Commission (July 2012), http://www.consumer.ftc.gov/articles/0272-how-keep-your-personal-information-secure.

privacy in the garbage they set out for collection. *See, e.g.*, *State v. Goss*, 834 A.2d 316 (N.H. 2003); *State v. Hempele*, 576 A.2d 793 (N.J. 1990); *State v. Morris*, 680 A.2d 90 (Vt. 1996). But the courts of New Hampshire, New Jersey, and Vermont have not, as we have, determined that they will depart from Fourth Amendment precedent only in the limited situations that are not present here. *See Kahn*, 701 N.W.2d at 825 ("Generally, we do not independently apply our state constitution absent language, concerns, and traditions unique to Minnesota.") To the contrary, the *Morris* court emphasized its freedom to depart from Supreme Court precedent: "We are a sovereign state, and this Court is entitled to take issue with *any constitutional decision* of the United States Supreme Court, regardless of whether our constitution provides the same or a different text." *Morris*, 680 A.2d at 101 (emphasis added). Because the courts in *Goss*, *Hempele*, and *Morris* were not constrained by the principles articulated in *Kahn*, 701 N.W.2d at 824, the dissent's reliance on those cases is misplaced.

### III.

Having concluded there is no principled basis to interpret Article I, Section 10, of the Minnesota Constitution to afford greater protection against warrantless searches of garbage set out for collection than the Fourth Amendment to the United States Constitution, we review the search of McMurray's garbage in accordance with *Greenwood*, 486 U.S. 35, and *Oquist*, 327 N.W.2d 587. Under *Greenwood* and *Oquist*, a person has no reasonable expectation of privacy in garbage set out for collection on the side of a public street because such garbage is readily accessible to scavengers and other members of the public. Here, McMurray left the garbage at the curb outside his home

15

with the expectation that the garbage collector would take it. Any member of the public could have accessed McMurray's garbage without trespassing on his property, and police do not need a warrant to search items that are exposed to the public.[8] Because a police officer could have taken the garbage from the curb directly, it was lawful for Officer Erlandson to obtain McMurray's garbage from the garbage collector. The warrantless search of McMurray's garbage, therefore, was reasonable under both the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution. Because we conclude that the search of McMurray's garbage was reasonable under the state and federal constitutions, the search warrant for McMurray's residence that police subsequently obtained based on evidence found in the garbage was valid. Therefore, the district court properly denied McMurray's motion to suppress evidence collected during the search of his residence.

Affirmed.


ANDERSON, J., took no part in the consideration or decision of this case.

---

[8] Some courts have rejected warrantless searches of garbage seized by police from within the curtilage. *See, e.g.*, *Commonwealth v. Ousley*, 393 S.W.3d 15, 25-26 (Ky. 2013) (distinguishing *Greenwood* because it did not deal with garbage within the curtilage). And we previously have emphasized that police may not *trespass* to search a person's garbage. *See Oquist*, 327 N.W.2d at 591. But here, the garbage was on the curb—not within the curtilage—and police could have accessed the garbage directly without trespassing on McMurray's property. The parade of overreaching investigative activities that the dissent invites us to rely on to decide this case is not presented here. We do not supply opinions in anticipation of unsubstantiated predictions of future law enforcement conduct. *See State v. Colsch*, 284 N.W.2d 839, 842 (Minn. 1979).

16

D I S S E N T

LILLEHAUG, Justice (dissenting).

Minnesotans have a reasonable expectation of privacy when they put their household waste in opaque bags and do what the government requires: place the bags in closed containers for collection, compaction, and conveyance to a lawful disposal site. I respectfully disagree with the majority that the Minnesota Constitution does not require a search warrant before law enforcement may seize and search such household waste.

I.

On Thursday, February 2, 2012, David McMurray did what most residents of his Hutchinson neighborhood do on a Thursday: he moved his garbage container to the curb for pick-up. Like most everyone else on that Thursday, McMurray placed opaque bags containing household waste in a container that complied with a municipal ordinance: a "clean, rust-resistant, water-tight, non-absorbent and washable closed container[], approved for the purpose by the city." Hutchinson, Minn., Code of Ordinances § 51.03 (2013). In Hutchinson, that closed container was furnished by Waste Management, the city franchisee.

Every week the Waste Management driver would take McMurray's bags from the closed container at the curb, throw the bags into the truck, compact the bags with the neighbors' garbage, and deposit the compacted household waste in the local landfill. But Thursday, February 2, was different. Based on a tip, a Hutchinson police officer called the driver and arranged for McMurray's bags to receive special treatment. The officer directed that, rather than being thrown in the truck, compacted with the neighbors' bags,

and taken to the landfill, McMurray's bags be set aside for a special law enforcement inspection.

Not surprisingly, the city's franchisee did as told. Shortly after picking up and segregating McMurray's bags, Waste Management delivered them to the officer, who took them to the police station. Opening the bags, the officer sifted through the household waste and found evidence of illegal narcotics. The officer used that evidence as probable cause for a warrant to search McMurray's residence. That search led to McMurray being charged with a third-degree controlled substance violation.

In the district court, McMurray moved to suppress the narcotics evidence on the ground that the warrantless seizure and search of his bags was unconstitutional. The district court denied the motion and convicted McMurray on stipulated facts. The court of appeals affirmed the conviction. *State v. McMurray*, No. A12-2266, 2013 WL 5021206 (Minn. App. Sept. 16, 2013). We granted review to decide whether, under the Minnesota Constitution, a citizen has a reasonable expectation of privacy in the contents of bags containing household waste placed in a closed container set out at the curb for lawful collection.

## II.

McMurray acknowledges that the issue presented in this case has already been decided under the Fourth Amendment. The U.S. Supreme Court has held that there is no reasonable expectation of privacy in garbage placed at the curb for collection. *California v. Greenwood*, 486 U.S. 35, 39-41 (1988).

Instead, McMurray invokes Article I, Section 10 of the Minnesota Constitution ("Section 10"), which contains a warrant requirement almost identical to the Fourth Amendment's. Despite the similarity in wording, "[i]t is axiomatic that we are free to interpret the Minnesota Constitution as affording greater protection against unreasonable searches and seizures than the United States Constitution." *State v. Askerooth,* 681 N.W.2d 353, 361 (Minn. 2004). And we have done so. *See id.* at 363 (search or seizure during traffic stop must be reasonable even when a minor law has been violated). *See also State v. Davis*, 732 N.W.2d 173, 181 (Minn. 2007) (dog sniff in hallway outside apartment constitutes a search requiring a reasonable articulable suspicion of criminal activity); *State v. Carter*, 697 N.W.2d 199, 212 (Minn. 2005) (dog sniff of an area outside storage unit was an unreasonable search under Section 10 when officers lacked a reasonable articulable suspicion of criminal activity); *State v. Fort,* 660 N.W.2d 415, 419 (Minn. 2003) (search of a passenger stopped for routine traffic violations exceeded the scope of a traffic stop); *In re Welfare of B.R.K.*, 658 N.W.2d 565, 577-78 (Minn. 2003) (legitimate expectation of privacy under Section 10 for short-term social guests, even if not under Fourth Amendment); *Ascher v. Comm'r of Pub. Safety*, 519 N.W.2d 183, 187 (Minn. 1994) (temporary roadblocks to stop cars without objective, individualized articulable suspicion violate Section 10); *In re Welfare of E.D.J.,* 502 N.W.2d 779, 783 (Minn. 1993) (under Section 10, a person is "seized" when he reasonably concludes that he is not free to leave). But we have never applied Section 10 to the question presented today.

The majority is correct that we must not "lightly" interpret and apply Section 10 in a manner different than the Fourth Amendment. The majority is also correct that we may do so if we have a clear and strong conviction that there is a principled basis for so doing, *State v. Carter*, 596 N.W.2d 654, 657 (Minn. 1999). *See Kahn v. Griffin*, 701 N.W.2d 815, 828 (Minn. 2005).

As the majority states, under *Kahn v. Griffin*, we will consider a departure from U.S. Supreme Court precedent under any of three conditions. 701 N.W.2d at 828. In my view, this case implicates the third condition: whether a U.S. Supreme Court holding (here, in *California v. Greenwood*) adequately protects Minnesotans' basic rights and liberties. I have a clear and strong conviction that it does not. Our basic rights and liberties are at risk if government can seize and search Minnesotans' household waste without a search warrant and, apparently, without even a reasonable articulable suspicion of wrongdoing.

### III.

Under both the U.S. Constitution and the Minnesota Constitution, warrantless searches in circumstances in which an individual has a reasonable expectation of privacy "are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967); *In re Welfare of D.A.G.*, 484 N.W.2d 787, 789 (Minn. 1992).

Prior to *Greenwood*, we recognized "that a householder may ordinarily have some expectation of privacy in the items he places in his garbage can." *State v. Oquist*, 327 N.W.2d 587, 591 (Minn. 1982) (noting that expectation but concluding that there

was no such expectation when household waste was seized at the curb). Household waste contains a great deal of personal information that most of us expect will remain private. As the New Jersey Supreme Court put it, "Clues to people's most private traits and affairs can be found in their garbage." *State v. Hempele,* 576 A.2d 793, 802 (N.J. 1990). One who examines garbage carefully can learn about the household members' physical and mental health, sexual activities, financial status, consumer preferences, political affiliations, and personal relationships. *See id.* at 802-03; *see also State v. Tanaka*, 701 P.2d 1274, 1276-77 (Haw. 1985). At different times, people dispose of drug bottles, birth control devices, sanitary products, printouts of emails, check registers, photos, and whatever they have recently read or eaten. It is the very privacy—the intimacy—of this personal information that makes it of great interest to others, ranging from law enforcement officers to private investigators to neighborhood snoops. Until a person's garbage " 'ha[s] lost its identity and meaning by becoming part of a large conglomeration of trash elsewhere,' " we " 'can readily ascribe many reasons why residents would not want their . . . telltale refuse and trash to be examined by neighbors or others.' " *People v. Krivda*, 486 P.2d 1262, 1268 (Cal. 1971) (emphasis omitted) (quoting *People v. Edwards*, 458 P.2d 713, 718) (Cal. 1969)), *vacated*, 409 U.S. 33 (1972), *remanded to* 504 P.2d 457 (Cal. 1973) (reaffirming original decision under the California Constitution).

Since the 1980s, when *Oquis*t and *Greenwood* were decided, the nature of household waste has changed. This is not your grandfather's garbage. Vastly more household waste is being recycled and the digital revolution is in full flourish. For good

public policy reasons, government encourages and often requires citizens to segregate and set out or deliver for recycling digital devices such as obsolete or broken servers, routers, tablets, and cell phones. And waste disposal bags and containers may now contain digital material such as disks, chips, and flash drives. As the U.S. Supreme Court has recently and aptly recognized, digital devices and media, "[w]ith all they contain and all they may reveal, . . . hold for many Americans 'the privacies of life.'" *Riley v. California,* ___ U.S. ___, 134 S. Ct. 2473, 2494-95 (2014) (citation omitted). This trend will only accelerate as we enter the "internet of things" in which hundreds of billions of objects will become digital devices. *See generally* Scott R. Peppet, *Regulating the Internet of Things: First Steps Toward Managing Discrimination, Privacy, Security, and Consent*, 93 Tex. L. Rev. 85, 89 (2014).

Not only has the nature of household waste changed, so has government's ability to analyze it. Investigative tools are much more sophisticated and their probing capacity now extends well beyond the curtilage. For example, law enforcement now has the ability to test—easily and economically—the DNA that can be gleaned from all manner of waste. The biological detritus of our existence inevitably ends up in household waste—on items such as used tissues and sanitary products, partially eaten food, discarded contact lenses, and things that we've simply touched—and there is little that people can do to avoid this, short of illegally burning or chemically treating every item. *See Hempele,* 576 A.2d at 808. For most people, maintaining the privacy of their household waste by burying it on the back forty is no longer a viable option.

What has not changed, and what should not change, is the long-standing presumption that a search warrant is required to search a Minnesotan's container. A container is "any object capable of holding another object," including "luggage, boxes, bags, clothing, and the like." *New York v. Belton*, 453 U.S. 454, 460-61 n.4 (1981). The bags that hold household waste and the bins in which they must be placed are simply forms of containers. Typically, in the absence of an exception such as exigency or search incident to arrest, we require that the State obtain a warrant before it opens a Minnesotan's container. "A container which can support a reasonable expectation of privacy may not be searched, even on probable cause, without a warrant." *United States v. Jacobsen*, 466 U.S. 109, 120 n.17 (1984). "As for the contents of a container, the mere fact that the container itself is in plain view provides no basis for a warrantless seizure and search of it, even assuming probable cause as to the contents." *In re Welfare of G.M.*, 560 N.W.2d 687, 694 (Minn. 1997) (quoting 1 Wayne R. LaFave, *Search and Seizure* § 2.2(a), at 401-02 (3d ed. 1996)) (but holding that warrantless search of a closed pouch on the suspect's person was justified under the search incident to arrest exception). McMurray's opaque bags and the closed receptacle in which they were placed were containers that should not have been seized and searched without a warrant.

But, holds the majority, based on *Greenwood* and our earlier Fourth Amendment cases, a citizen's reasonable expectation of privacy in household waste is lost when the waste is set out for collection in an area accessible to the public. As *Greenwood* put it: "It is common knowledge that plastic garbage bags left on or at the side of a public street

are readily accessible to animals, children, scavengers, snoops, and other members of the public," as well as to the waste disposal company. 486 U.S. at 40 (footnotes omitted).

With all respect to the majorities in *Greenwood* and here, it has always struck me as odd that, because raccoons, squirrels, and their nosy human counterparts try to get into household waste containers and sometimes succeed, that should somehow determine the reasonableness of our expectations of privacy. That concept is as outdated as the dented metal garbage cans with partially open lids and visible garbage that I remember from childhood. Not only is household waste different than it was when *Greenwood* was decided, so are the bags and special containers into which the waste is placed for pickup or recycling. Like the City of Hutchinson, many municipalities now require closed, vermin-proof containers.[1]

The golden age of human scavenging, too, has passed. While most garbage containers set out for collection are not locked, and dumpster diving may still occur, government now recognizes that homeowners and renters have a legitimate expectation that the household waste they set out for disposal or recycling will not be strewn about or diverted but will be conveyed directly for reuse, burning, or interment. Minneapolis and Duluth, for example, prohibit turning over or upsetting the contents of any waste

---

[1] In the words of one local ordinance, "Refuse when stored out-of-doors shall be stored in durable, rust-resistant, nonabsorbent, watertight, rodent-proof, easily cleanable containers with closefitting, fly-tight covers." St. Paul, Minn., Code of Ordinances § 357.05(f)(2) (2014).

container,[2] and most municipalities have laws against littering. Minneapolis provides that "no persons other than those authorized by the city engineer shall remove any solid waste [from a container], except with the consent of the owner or occupant of the property served." Minneapolis, Minn., Code of Ordinances § 225.590 (2014). Saint Paul, Bloomington, Duluth, Brooklyn Park, Plymouth, Saint Cloud, Moorhead, and other cities prohibit scavenging of recyclable materials.[3] I agree with the New Mexico

---

[2] *See* Minneapolis, Minn., Code of Ordinances § 225.590 (2014) ("No person shall turn over or upset the contents of any solid waste container without replacing the same."); Duluth, Minn., Legislative Code § 24-3(a) (2014) ("No person shall willfully turn over or upset any vessel or container used for storing manure, recyclables, compost or solid waste, thereby spilling the contents or any portion thereof on any street, highway or public grounds or upon private property owned by another person . . . .").

[3] *See* St. Paul, Minn., Code of Ordinances § 357.11 (2014) ("It shall be unlawful for any person who is not authorized by the city or county to take or collect recyclable material set out for authorized collection programs within the city."); Bloomington, Minn., City Code § 10.47 (2014) ("It shall be unlawful for any person who is not authorized by the City to remove, take for salvage or destroy any recyclable materials . . . that have been set out for collection."); Duluth, Minn., Legislative Code § 24-9 (2014) ("No person shall engage in the business of collecting or removing recyclables or solid waste within the city without first obtaining a license to do so, except that nonprofit organizations may collect recyclables as a fund raising operation."); Brooklyn Park, Minn., Code of Ordinances § 98.09 (2014) ("It is unlawful for any person, except a law enforcement officer acting in the course of official business, to scavenge or otherwise collect refuse, recyclable materials or yard waste at the curb or from refuse containers or from recyclable materials containers without a license therefor from the city and an account relationship with the owner or occupant of the premises."); Plymouth, Minn., City Code § 600.29, subd. 6 (2015) ("It is unlawful for any person other than the owner or owner's authorized employees or contractor to collect, remove, or dispose of designated recyclables after the materials have been placed or deposited for collection."); St. Cloud, Minn., Code of Ordinances § 244:30, subd. 7 (2007) ("It will be unlawful and an offense against this ordinance for any person, firm, or corporation other than the owner, lessee, or occupant of a residential dwelling, to pick up recyclable materials for their own use."); Moorhead, Minn., City Code § 3-4-9(E) (2014) ("It shall be unlawful and an offense against this section for any person, firm or corporation to pick up

(Footnote continued on next page.)

Supreme Court, which said recently, "We consider compliance with local ordinances governing the disposal of household garbage to support the reasonableness of an expectation that it will remain private from unwarranted inspection by the government." *State v. Crane*, 329 P.3d 689, 696-97 (N.M. 2014) (Vigil, C.J.).

While a number of state supreme courts have followed *Greenwood* and held that there is no reasonable expectation of privacy in household waste set out for collection,[4]

---

(Footnote continued from previous page.)
separated materials for his/her own use, except the owner, lessee or occupant of a residential dwelling may take back materials set out at that particular dwelling.").

[4]     In concluding that there is no reasonable expectation of privacy in garbage set out for collection, most of these courts focused on *Greenwood*'s outdated characterization of such garbage as "readily accessible" to the public. *See, e.g.*, *Rikard v. State*, 123 S.W.3d 114, 119-20 (Ark. 2003); *People v. Hillman*, 834 P.2d 1271, 1277-78 (Colo. 1992) (concluding that there is not a reasonable expectation of privacy in garbage placed adjacent to the sidewalk, which is "readily accessible" to the public); *State v. DeFusco*, 620 A.2d 746, 751-53 (Conn. 1993) ("When the defendant placed his garbage at the curb in front of his house for collection by the garbage collector, a myriad of intruders, purposeful or errant, could legally have sorted through his garbage."); *State v. Donato*, 20 P.3d 5, 8-10 (Idaho 2001) (reasoning that garbage is "knowingly exposed" to the public when set out for collection); *State v. Kimberlin*, 984 P.2d 141, 145-46 (Kan. 1999) (explaining that Kansas does not generally depart from federal court interpretations of the Fourth Amendment, and that Fourth Amendment reasonableness turns on public accessibility to garbage); *Commonwealth v. Pratt*, 555 N.E.2d 559, 567-69 (Mass. 1990) (reasoning that garbage set out for collection is exposed to the public, indicating that the defendant abandoned his privacy interests in the garbage); *State v. Schmalz*, 744 N.W.2d 734, 741-43 (N.D. 2008) (relying on *Greenwood*'s public exposure discussion to conclude that there is no reasonable expectation of privacy in garbage set out for collection); *Barekman v. State*, 200 P.3d 802, 809-10 (Wyo. 2009) (reasoning that there can be no reasonable expectation of privacy in garbage set out for collection given exposure to the public, animals, and the elements).

others have recognized such an expectation, and have required a warrant,[5] or at least a

reasonable articulable suspicion,[6] for seizure and search.  Having reviewed the arguments

---

[5]     The California, Hawaii, New Hampshire, New Jersey, New Mexico, and Vermont Supreme Courts have all interpreted their state constitutions to require a warrant for searches of garbage set out for collection on the basis that there is a reasonable expectation of privacy in such garbage.  *See Krivda*, 486 P.2d 1262, 1268-69 (Cal. 1971) (holding that defendants who set out their garbage for collection had "a reasonable expectation that their trash would not be rummaged through and picked over by police officers acting without a search warrant"); *State v. Tanaka*, 701 P.2d 1274, 1276-77 (Haw. 1985) (cited with approval post-*Greenwood* by the Supreme Court of Hawai'i in *State v. Lopez*, 896 P.2d 889, 901 (Haw. 1995)); *State v. Goss*, 834 A.2d 316, 319-20 (N.H. 2003); *State v. Hempele*, 576 A.2d 793, 810, 814 (N.J. 1990); *State v. Crane*, 329 P.3d 689, 696 (N.M. 2014) (adopting the New Mexico Court of Appeals' holding in *State v. Granville,* 142 P.3d 933, 943 (N.M. Ct. App. 2006), that "[a]llowing the State to conduct a warrantless search of refuse set out for collection when an individual is required by law to dispose of his refuse in a specific place, time, and manner is inconsistent with the privacy protections provided by Article II, section 10"); *State v. Morris,* 680 A.2d 90, 99-100 (Vt. 1996).  The Washington Supreme Court has similarly determined that a warrant is required to search garbage set out for collection, although the relevant provision of Washington's constitution focuses on whether the "private affairs" of an individual have been unreasonably violated instead of whether a person's expectation of privacy is reasonable.  *State v. Boland*, 800 P.2d 1112, 1116-17 (Wash. 1990).  Nevertheless, the Washington Supreme Court cited as persuasive the Hawai'i and New Jersey Supreme Courts' discussions in *Tanaka* and *Hempele* of a reasonable expectation of privacy in garbage.

[6]     In *Litchfield v. State*, the Indiana Supreme Court rejected the defendant's contention that police seizure of trash set out for collection is per se unreasonable but also concluded that "it is not reasonable for law enforcement to search indiscriminately through people's trash."  824 N.E.2d 356, 363 (Ind. 2005).  The court reasoned that "[a]llowing random searches, or searches of those individuals whom the officers hope to find in possession of incriminating evidence gives excessive discretion to engage in fishing expeditions."  *Id.* at 364.  Instead, the court determined that "a requirement of articulable individualized suspicion, essentially the same as is required for a 'Terry stop' of an automobile, imposes the appropriate balance between the privacy interests of citizens and the needs of law enforcement."  *Id.*  The Montana Supreme Court has adopted *Litchfield*'s approach of requiring reasonable articulable suspicion for a search of garbage set out for collection, largely on the basis that the abandonment of garbage at the curbside is frequently compelled by government regulations.  *State v. A Blue in Color,*

(Footnote continued on next page.)

set forth in these cases, I have a definite and firm conviction that the better view is that a warrant is required.

IV.

The majority holds that, under the Minnesota Constitution, Minnesotans have no expectation of privacy in household waste at the curb, that the officer's seizure and search was "lawful," and that, essentially, household privacy ends at the sidewalks. Yet, while the question of whether at least a reasonable articulable suspicion is required for the seizure of household waste was fully briefed by the parties, the majority opinion "[p]rudently" decides not to answer that question. I would like to think that the question remains open, but the issue before us is the constitutional standard for the seizure and search of household waste. Rather than declaring the search "lawful," the majority should have made clear that a warrantless seizure and search is not lawful without at least a reasonable articulable suspicion.

The diversion and inspection of household waste is more intrusive than investigative activities we have held require a reasonable articulable suspicion, such as dog sniffs in apartment hallways or outside storage units. *See State v. Davis,* 732 N.W.2d 173, 181 (Minn. 2007); *State v. Carter,* 697 N.W.2d 199, 211-12 (Minn. 2005). In *Carter*, we highlighted "the capability of the [storage] unit, like a residence, to store a

(Footnote continued from previous page.)
*1993 Chevrolet Pickup*, 116 P.3d 800, 805 (Mont. 2005). The Alaska Supreme Court has also adopted the reasonable suspicion standard for searches of garbage set out for collection, *Beltz v. State*, 221 P.3d 328, 337 (Alaska 2009), recognizing that while there is a diminished expectation of privacy in such garbage, "this diminished privacy interest is still entitled to some protection against undue government intrusion," *id.* at 336.

significant amount of personal items and be the site of personal activity." *State v. Eichers*, 853 N.W.2d 114, 126 (Minn. 2014) (citing *Carter*, 697 N.W.2d at 210-11). By contrast, we determined in *Eichers* that "[a] mailed package does not give rise to the same concerns regarding personal activity, and the number of personal items a package can contain is significantly lower." *Id.* In effect, "[a] residence or storage unit is a window into a person's life in a way that a mailed package is not." *Id.*

Household waste from a residence is far more analogous to the odors from a hallway or storage unit than to those from a mailed package, as household waste is a window into "people's most private traits" and activities. *State v. Hempele,* 576 A.2d 793, 802 (N.J. 1990). And people have less choice about what they must put out for waste disposal than what they put in a storage unit or in a mailed package.

If Minnesotans' household privacy ends at their sidewalks, there would be nothing unconstitutional about a government program to seize and perform a forensic inspection of the waste from every Minnesota household, all without the barest suspicion. Nor would it be unconstitutional for government agencies to scan and copy the data on all digital devices Minnesotans turn in for recycling. Of course, I am not aware that any such programs are contemplated. But, in an age in which government can surreptitiously gather almost every call and email,[7] it is not in the realm of fantasy to expect that, soon,

---

[7] Government has a tendency to gather massive amounts of detailed information on citizens. In the 1970s, the U.S. Senate Select Committee known as the Church Committee learned that, for over 20 years, the CIA, with the cooperation of the U.S. Postal Service, illegally opened mail, collecting information on 1.5 million Americans. For 28 years, the NSA intercepted every overseas telegram sent or received

(Footnote continued on next page.)

government agencies will have the motivation and the technology to do so. This case would have been a good opportunity to make clear that, in the absence of reasonable articulable suspicion, government does not have a green light to broaden and deepen its efforts to acquire our most intimate information.

V.

In this case we should have said, as the United States Supreme Court said about cellphone searches: "Our answer to the question of what police must do before searching [Minnesotans' household waste is] simple—get a warrant." *See Riley*, ___ U.S. at ___, 134 S. Ct. at 2495.

For all of these reasons, I respectfully dissent.


PAGE, Justice (dissenting).

I join in the dissent of Justice Lillehaug.

---

(Footnote continued from previous page.)
by an American citizen. One million Americans without a court conviction had FBI files. Walter F. Mondale, et al., *National Security and the Constitution: A Conversation Between Walter F. Mondale and Robert A. Stein,* 98 Minn. L. Rev. 2011, 2015-16 (2014). In recent years, government has undertaken extensive programs to collect information on telephone calls, internet communications, financial transactions, and citizens' locations. Advanced, inexpensive tracking and monitoring devices are now readily available to state and local law enforcement.