**STATE of Minnesota, Respondent,**

v.

**Adrian OQUIST, Appellant.**

**No. 81–914.**

Supreme Court of Minnesota.

Dec. 23, 1982.

---

C. Paul Jones, Public Defender, and Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and Richard D. Hodsdon, Sp. Asst. Atty. Gen., St. Paul, John Dimich, County Atty., Grand Rapids, for respondent.

COYNE, Justice.

Defendant was convicted by a district court jury of attempted murder in the first degree and burglary with a tool and was sentenced to concurrent prison terms of 203 months for the attempted murder and 41 months for the burglary. On appeal from the judgment of conviction, the defendant contends that a warrantless examination of his garbage was an unreasonable search, violative of the fourth amendment, and that the court erred in denying a pretrial motion to suppress the evidence procured from his garbage and to preclude introduction of prior burglary convictions. We affirm.

At about 5 a.m. on April 9, 1981, Mrs. Georgia Brown entered the Hut Bar in Marble, Minnesota, where she worked as a cleaning lady. As she reached for the main light switch, a man jumped at her from behind the bar. Pointing a knife at her, the man ordered Mrs. Brown to sit behind the bar. The man put a tall jar of coins and some bottles of liquor on the bar, then attacked Mrs. Brown with the knife, slash-

ing her throat and hands and stabbing her in the lower right chest. Medical examination disclosed that the knife had penetrated her liver.

After the man left the bar, Mrs. Brown summoned help. Mrs. Brown promptly described her assailant as a husky male in his mid-twenties, with brown shoulder length hair parted in the middle and a heavy mustache. She said he wore a red and black checkered flannel shirt and a quilted vest.

Shortly after 7 a.m. a deputy sheriff found Mrs. Brown's keys in a garbage can behind the bar. A search of the area was begun. The deputy sheriff in charge of the investigation enlisted the aid of the village maintenance crew, instructing them to look through the garbage as it was collected and to be on the look-out for certain items. The deputy who found Mrs. Brown's keys extended his search to every garbage can within a five-block area. During the course of his search the deputy twice checked the defendant's garbage can but found "just plain garbage."

As early as 7:30 a.m. the deputies had sought to question the defendant, because the defendant and his past record were known by one of the deputies and he fitted the description given by Mrs. Brown, but the defendant had already gone to work with the maintenance crew. By prearrangement two deputies met the defendant at his house about noon. The defendant told them that he had spent the previous evening drinking at Sam's Bar, and that when the bar closed he and three companions went to the defendant's house where they continued drinking until close to 4 a.m. when two of the men left; the third man remained asleep on the couch. The defendant said he did not leave the house again until he went to work at 6:50 a.m. The defendant worked on the village garbage detail, and that morning he helped the police examine the garbage as it was collected.

About 1:30 a.m. the following morning, two deputies picked up two plastic garbage bags near the public alley immediately behind the defendant's house. The deputies did not leave the paved portion of the alley to reach the bags, one of which had been tied shut and thrust into an uncovered garbage can, the other lying open on the ground. The tied bag contained a flannel checked shirt, a quilted vest, and two bottles of liquor with serial numbers indicating that they were among those taken from the Hut Bar.[1] Based on the evidence found in the garbage and on Mrs. Brown's description of her assailant, the deputies obtained a warrant to search the defendant's house and premises where they found the jar of coins taken from the Bar, two unopened bottles of liquor, a knife, and tools suitable for use as jimmies.

During the search of the defendant's yard, a neighbor told one of the deputies that he had seen the defendant prowling about the yard at 5:50 a.m. on April 9th— less than an hour after the attack on Mrs. Brown and at a time when the defendant claimed he was sleeping.

After his arrest, the defendant appeared in an eight-man lineup; Mrs. Brown identified the defendant as her assailant. She identified the defendant a second time from a photographic lineup of thirteen pictures shown her at the defendant's request, and at the trial Mrs. Brown also identified the defendant as the man who attacked her.

Declaring that "the Fourth Amendment protects people, not places", the Supreme Court has ruled that the critical inquiry in claims of unlawful search and seizure is whether or not the person who claims the protection of the fourth amendment has a justifiable or reasonable expectation of privacy in the invaded place or the seized items. *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967). Accordingly, the constitutionality of the reconnaissance of garbage may no longer be tested merely by the

---

1. Although he admitted that the checked shirt and quilted vest belonged to him, the defendant testified that he had left them in his car, which was parked, unlocked, behind Sam's Bar and that he had not seen the shirt or vest since the month before the burglary.

application of traditional property law concepts of abandonment and trespass. We have, however, previously noted the distinction between abandonment in the property-law sense and abandonment in the constitutional sense. *City of St. Paul v. Vaughn,* 306 Minn. 337, 346, 237 N.W.2d 365, 370–71 (1975). Under the law of property, the question is whether the owner has voluntarily, intentionally, and unconditionally relinquished his interest in the property so that another, having acquired possession, may successfully assert his superior interest. Under the law of search and seizure, however, the question is whether the defendant has, in discarding the property, relinquished his expectation of privacy with respect to the property so that neither search nor seizure is within the proscription of the fourth amendment. "In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein." *Id.* at 346, 237 N.W.2d at 371 (footnote omitted).

With what appears to be a single exception,[2] the United States Courts of Appeal which have considered the question have adopted the position that the act of placing trash in garbage cans for collection signifies abandonment, terminating any fourth amendment protection, because "absent proof that a person has made some special arrangement for the disposition of his garbage inviolate, he has no reasonable expectation of privacy with respect to it once he has placed it for collection." *United States v. Crowell,* 586 F.2d 1020, 1025 (4th Cir. 1978), cert. denied, 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979). *Accord, United States v. Vahalik,* 606 F.2d 99, 101 (5th Cir.1979) cert. denied, 444 U.S. 1081, 100 S.Ct. 1034, 62 L.Ed.2d 765 (1980), *United States v. Shelby,* 573 F.2d 971, 973–74 (7th Cir.) cert. denied, 439 U.S. 841, 99 S.Ct. 132, 58 L.Ed.2d 139 (1978).

California, on the other hand, has ruled that a householder retains an expectation of privacy in the contents of his garbage cans and trash barrels until the trash has lost its identity and meaning by becoming part of a large conglomeration of trash elsewhere. The principle was first enunciated in *People v. Edwards,* 71 Cal.2d 1096, 458 P.2d 713, 80 Cal.Rptr. 633 (1969), in which it was held that a warrantless search for marijuana in a trash can, which was located within a few feet of the back door of the defendant's home and required a trespass for its inspection, constituted an unreasonable governmental intrusion violative of the defendant's reasonable expectation of privacy. *Id.* at 1104, 458 P.2d at 718, 80 Cal.Rptr. at 638. In another prosecution for possession of marijuana, *People v. Krivda,* 5 Cal.3d 357, 486 P.2d 1262, 96 Cal.Rptr. 62 (1971), vacated, 409 U.S. 33, 93 S.Ct. 32, 34 L.Ed.2d 45 (1972), reaff'd, 8 Cal.3d 623, 504 P.2d 457, 105 Cal.Rptr. 521, cert. denied, 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145 (1973), a sharply divided court held that the warrantless examination by the police of trash which the garbage collector had, at police request, segregated in the well of the refuse truck after removing it from trash barrels placed at the curb for collection was an unreasonable governmental intrusion violative of the defendant's reasonable expectation of privacy. *Id.* at 366, 486 P.2d at 1268, 96 Cal.Rptr. at 68. The dissent expressed the view that although a householder may reasonably expect privacy with respect to trash cans immediately adjacent to his home, he has "neither a reasonable expectation of privacy as to his curbside trash nor a right to expect that his trash will be commingled with that of others before it is subject to examination, governmental or otherwise." *Id.* at 368, 486 P.2d at 1269, 96 Cal.Rptr. at 69.

It may be observed that the recognition of a justifiable expectation of privacy with respect to garbage is simply a recognition that an examination of garbage by the police is a search and is therefore subject to the constraints imposed by the Fourth Amendment. Just what those constraints are is another matter. Although the search involved in *Krivda* was regarded as unreasonably intrusive, in a subsequent California case, *People v. Parker,* 44 Cal.App.3d

---

**2.** *See Biondich v. United States,* 652 F.2d 743    (8th Cir.1981).

222, 118 Cal.Rptr. 523 (1974) the court of appeals concluded that exterior trash receptacles are entitled to no greater degree of privacy than automobiles and that garbage cans may be searched on probable cause and on a showing that "delay would enhance the possibility the articles would be destroyed or placed beyond the reach of the officers." *Id.* at 229, 118 Cal.Rptr. at 529. See *People v. Dumas,* 9 Cal.3d 871, 883, 512 P.2d 1208, 1216, 109 Cal.Rptr. 304, 312 (1973). Recently, in a case originating in Minnesota under circumstances markedly like those giving rise to the *Krivda* case, *supra,* the United States Court of Appeals declined to adopt either the "abandonment" doctrine followed by other federal courts or the "commingled trash" doctrine espoused by California. *United States v. Biondich,* 652 F.2d 743 (8th Cir.1981). Although the Court of Appeals recognized that a person ordinarily retains some expectation of privacy in the items he places in his garbage can, the court concluded that under the circumstances the defendant retained no legitimate expectation of privacy in his garbage once it left the curtilage of his residence. *Id.* at 745.

 We agree that a householder may ordinarily have some expectation of privacy in the items he places in his garbage can. Under the particular facts of this case, however, we are persuaded that the defendant had no reasonable expectation of privacy with respect to the contents of the plastic bags placed in or near his open garbage can and that the examination of the garbage, which was procured without trespassing on the defendant's premises, was lawful.

Even if we were to regard the inspection of the defendant's garbage as an unreasonable governmental intrusion on a reasonable expectation of privacy and, hence, a violation of the fourth amendment, we should, nevertheless, be constrained to hold that the introduction of the items found in the defendant's garbage and those subsequently found in his house and yard constituted harmless error in view of the other overwhelming evidence of the defendant's guilt.

At the beginning of the trial the court denied a motion to suppress evidence of the defendant's six prior convictions, ruling that four of the six convictions—two for burglary and two for forgery—were admissible for impeachment purposes. The defendant testified on his own behalf and on direct examination, prompted by the state's anticipated impeachment, admitted the four prior convictions. He now contends that the refusal to suppress evidence of the convictions constituted prejudicial error.

Employing the analysis recommended in prior cases, we conclude that the trial court did not clearly abuse its discretion in denying the motion to suppress evidence of prior convictions for impeachment purposes. *State v. Jones,* 271 N.W.2d 534, 537–38 (Minn.1978); *State v. Kvale,* 302 N.W.2d 650, 653 (Minn.1981).

Affirmed.