OPINION
WRIGHT, Justice.
In this case, we consider whether there is a principled basis for interpreting Article I, Section 10, of the Minnesota Constitution to require greater protection than the Fourth Amendment to the United States Constitution in the context of a warrantless search of garbage set out for collection in an area accessible to the public. Applying the principles articulated in Kahn v. Griffin, 701 N.W.2d 815 (Minn.2005), to the facts of this case, we do not *688 have a “clear and strong conviction” that there is a principled basis for interpreting Article I, Section 10, of the Minnesota Constitution to require greater protection than the Fourth Amendment to the United States Constitution. We therefore affirm.
On January 25, 2012, a mandated reporter informed the Hutchinson police that appellant David Ford McMurray’s daughter saw her mother with “a pipe believed to be used for drugs.” Officer Erlandson, an investigator with Hutchinson Police Services and a member of the Southwest Metro Drug Task Force, checked police records and learned that both McMurray and his wife previously had been arrested for controlled substance violations.
Officer Erlandson contacted the commercial truck driver who collects McMur-ray’s garbage and sought the driver’s assistance in securing the garbage that McMurray placed at the curb for collection. On February 2, 2012, Officer Erland-son observed the driver pick up the garbage from the curb outside McMurray’s home and immediately thereafter met the driver in a predetermined location to retrieve the garbage. When Officer Erland-son searched the garbage, he found several plastic bags containing white residue, which later tested positive as methamphetamine. The garbage also contained drug paraphernalia and documents belonging to McMurray and his wife.
The next day, based on the information police received from the mandated reporter and the warrantless search of McMur-ray’s garbage, Officer Erlandson obtained a warrant to search McMurray’s home. Police executed the search warrant and found McMurray with two other people in an upstairs bedroom. While searching the bedroom, police found, inside a clothes basket, plastic bags containing a “crystal like substance” and a letter addressed to McMurray. A laboratory test confirmed that one of the plastic bags contained 3.3 grams of methamphetamine.
McMurray was charged with third-degree possession of a controlled substance. Minn.Stat. § 152.023, subds. 2(a)(1), 3(b) (2014). McMurray moved to suppress the evidence seized from his home. In support of the motion to suppress, McMurray argued that the warrantless search of his garbage violated Article I, Section 10, of the Minnesota Constitution, which provides, “The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized.” He further argued that without the evidence found in his garbage, the application for a warrant to search his home was not supported by probable cause, and that the search of his home was, therefore, unconstitutional. The State urged the district court to deny the suppression motion, citing State v. Oquist, 327 N.W.2d 587, 591 (Minn.1982), in which we held “the defendant had no reasonable expectation of privacy with respect to the contents of the plastic bags placed in or near his open garbage can” when the contents were examined “without trespassing on the defendant’s premises.” The district court denied the motion to suppress, concluding that Oquist was controlling.
McMurray waived his right to a jury trial and submitted his case to the district court on stipulated facts under Minn. R.Crim. P.26.Ó1, subd. 3. The district court found McMurray guilty of third-degree possession of a controlled substance and imposed a 24-month sentence, which is the mandatory minimum sentence for a person previously convicted of a felony controlled *689 substance crime. See Minn.Stat. § 152.023, subd. 3(b).
McMurray appealed to the court of appeals, arguing among other grounds that the district court committed reversible error by denying his motion to suppress. The court of appeals affirmed, stating that “[flollowing United States Supreme Court precedent, Minnesota courts have consistently held that garbage left on a curb or adjacent to an alley that is seized in a routine curbside pickup does not constitute an illegal search.” State v. McMurray, No. A12-2266, 2013 WL 5021206, at *2 (Minn.App. Sept. 16, 2013).
We granted McMurray’s petition for further review on the issue of whether Article I, Section 10, of the Minnesota Constitution requires greater protection than the Fourth Amendment to the United States Constitution in the context of a warrantless search of garbage set out for collection in an area accessible to the public.
I.
In California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the United States Supreme Court concluded that an individual does not have a reasonable expectation of privacy in garbage left at the curb. Id. at 39-41, 108 S.Ct. 1625. Consequently, a warrantless search of such garbage does not violate the Fourth Amendment to the United States Constitution. Id. Acknowledging Greenwood, McMurray concedes that the Fourth Amendment does not prohibit war-rantless searches of garbage set out for collection. Despite the fact that the language of Article I, Section 10, of the Minnesota Constitution is substantially similar to the language of the Fourth Amendment,[1] McMurray asks us to interpret Article I, Section 10, to provide greater protection than the Fourth Amendment because in his view the United States Supreme Court’s reasoning in Greenwood is not persuasive.[2] To support his argument, McMurray relies heavily on the Greenwood dissent and the decisions of a minority of other state courts.[3]
*690 As a separate source of rights, the Minnesota Constitution may under certain circumstances provide greater protection than the United States Constitution. Kahn, 701 N.W.2d at 823-24. Yet when independently interpreting the Minnesota Constitution, we will not reject a United States Supreme Court interpretation of identical or substantially similar language “merely because one prefers the opposite result.” Women of the State of Minn. by Doe v. Gomez, 542 N.W.2d 17, 30 (Minn.1995). Our precedent establishes that we approach the responsibility of interpreting identical or substantially similar language with restraint. Kahn, 701 N.W.2d at 828. As we follow the general principle of “favoring uniformity” with the United States Constitution, we decline to “lightly reject” a United States Supreme Court interpretation of “identical or substantially similar language.” Id. at 824. Rather, when a federal constitutional provision has the same or substantially similar language and the United States Supreme Court has interpreted that language, we will not construe the Minnesota Constitution as granting greater protection for individual rights “unless there is a principled basis to do so.” Id. (citing State v. Harris, 590 N.W.2d 90, 97-98 (Minn.1999)).
In Kahn, we identified a nonexclusive list of factors that may be considered in determining whether there is a principled basis for interpreting the Minnesota Constitution to provide greater protection than the United States Constitution;
(1) the text of the state Constitution, (2) the history of the state constitutional provision, (3) relevant state case law, (4) the text of any counterpart in the U.S. Constitution, (5) related federal precedent and relevant case law from other states that have addressed identical or substantially similar constitutional language, (6) policy considerations, including unique, distinct, or peculiar issues of state and local concern, and (7) the applicability of the foregoing factors within the context of the modern scheme of state jurisprudence.
Id. at 829. When the text of our state constitution is materially identical to the federal constitution, as it is here, we have construed the Minnesota Constitution to provide greater protection than the United States Constitution: (1) when the United States Supreme Court “ ‘has made a sharp or radical departure from its previous decisions’ and we ‘discern no persuasive reason to follow such a departure’ (2) when the Court has “retrenched on a Bill of Rights issue”; or (3) when the Court precedent “ ‘does not adequately protect our citizens’ basic rights and liberties.’ ” Rew v. Bergstrom, 845 N.W.2d 764, 795 (Minn.2014) (quoting Kahn, 701 N.W.2d at 828).
In light of the well-established principles articulated in Kahn, the issue presented in this case is not whether the reasoning of the Supreme Court in Greenwood is per *691 suasive. Rather, the issue is whether we have a “clear and strong conviction” that there is a “principled basis” for us to interpret Article I, Section 10, of the Minnesota Constitution to provide greater protection from warrantless searches of garbage set out for collection than the Fourth Amendment to the United States Constitution. We therefore consider whether the legal issue in this case presents one of the three situations articulated in Kahn, 701 N.W.2d at 828.
We first consider whether the United States Supreme Court’s decision in Greenwood marked a sharp or radical departure from its Fourth Amendment precedent. At the time of Greenwood’s appeal, the United States Supreme Court’s Fourth Amendment precedent had established the following two principles. First, a person could invoke the protections of the Fourth Amendment if the person had a reasonable expectation of privacy in the area or items searched. Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).[4] Second, what a person knowingly exposed to the public, even in the person’s own home or office, was not a subject of Fourth Amendment protection. California v. Ciraolo, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (quoting Katz, 389 U.S. at 351, 88 S.Ct. 507). Applying these two principles to the facts in Greenwood, the United States Supreme Court concluded that a warrantless search of garbage is permitted under the' Fourth Amendment because a person has no reasonable expectation of privacy in garbage set out for collection. 486 U.S. at 40-41, 108 S.Ct. 1625. The Greenwood Court reasoned that it is common knowledge that members of the public rummage through plastic garbage bags placed at the side of a public street. Id. at 40, 108 S.Ct. 1625. Furthermore, garbage is placed at the curb with the expectation that a third-party trash collector will take it, and the trash collector could sort through the garbage or permit others to do so. Id. The Greenwood Court concluded that it is not reasonable to expect the contents of garbage bags placed on the side of a public street for collection to remain private. Id. at 40-41, 108 S.Ct. 1625. Therefore, garbage bags placed at curbside for collection are outside the scope of Fourth Amendment protections and may be searched without a warrant and without reasonable suspicion of criminal activity.
Based on our review of the Greenwood decision, we conclude that it did not constitute a “sharp or radical departure” from the United States Supreme Court’s previous approach to the law. See Kahn, 701 N.W.2d at 828. Rather, it simply applied the principles previously articulated in Katz and Ciraolo in a slightly different context. Moreover, the analysis adopted in Greenwood was consistent with the decisions of a vast majority of state courts, including our decision applying the Fourth Amendment in State v. Oquist, 327 N.W.2d 587, 591 (Minn.1982).
We next consider whether the United States Supreme Court’s decision in Greenwood retrenched on a Bill of Rights issue. The relevant inquiry regarding retrenchment is not whether the United States Supreme Court has retrenched on Bill of *692 Rights issues generally but whether it has retrenched on the specific Bill of Rights issue at hand — here, protection against warrantless searches.[5] See, e.g., Rew, 845 N.W.2d at 795 (interpreting the question of retrenchment as referring only to the specific Bill of Rights issue at hand). We conclude that the Greenwood decision did not retrench on the protection against war-rantless searches. Far from retrenching on the existing protections against war-rantless searches, the analysis adopted in Greenwood was consistent with the decisions of a vast majority of state courts, including our decision in Oquist, 327 N.W.2d at 591. Moreover, McMurray has not identified any court or commentator that has described Greenwood as a “retrenchment” on the protections against warrantless searches.[6]
Finally, we consider whether the Greenwood rule permitting warrantless searches of garbage set out for collection fails to adequately protect a basic right or liberty of the citizens of Minnesota. See Kahn, 701 N.W.2d at 828. This inquiry requires more than a conviction that we would have decided the issue differently in the first instance. See State v. Wiegand, 645 N.W.2d 125, 133 n. 8 (Minn.2002) (refusing to interpret the Minnesota Constitution more broadly than the United States Constitution with regard to dog sniffs and stating that “we do not resort to the Minnesota Constitution whenever we simply would have decided the matter differently”). Instead, our inquiry considers whether there is a “unique, distinct, or peculiar issue[ ] of state and local concern” that requires protection. Kahn, 701 N.W.2d at 829. For example, in Friedman v. Commissioner of Public Safety, this court observed that “Minnesota has a long tradition of assuring the right to counsel.” 473 N.W.2d 828, 831 (Minn.1991). In light of this tradition, inter alia, we held in Friedman that the Minnesota Constitution gives a motorist a limited right to consult an attorney before deciding whether to submit to chemical testing for blood alcohol. Id. at 835.
Unlike the traditional protection of the right to counsel recognized in Friedman, Minnesota does not have a long tradition of protecting garbage set out for collection from a warrantless search. Instead, during the last 32 years, we have repeatedly held that garbage set out for collection is not protected by the Fourth Amendment and may be searched without a warrant. See State v. Dreyer, 345 N.W.2d 249, 250 (Minn.1984); Oquist, 327 N.W.2d at 591; see also State v. Krech, 403 N.W.2d 634, 636 (Minn.1987) (stating that garbage placed in a dumpster at a duplex was “abandoned property in which defendant no longer had a reasonable expectation of privacy”); cf. State v. Goebel, 654 N.W.2d 700, 703-04 (Minn.App.2002).
*693 In sum, we conclude that Greenwood was not a sharp or radical departure from United States Supreme Court precedent, did not retrench on a Bill of Rights issue, and does not fail to adequately protect a unique, distinct, or peculiar issue of state and local concern. We therefore conclude there is no principled basis for us to interpret Article I, Section 10, of the Minnesota Constitution to require greater protection than the Fourth Amendment to the United States Constitution in the context of a warrantless search of garbage set out for collection in an area accessible to the public.
II.
The dissent would interpret Article I, Section 10, to require greater protection than the Fourth Amendment for three reasons. First, the dissent is persuaded by the arguments put forward by Justice Brennan in his dissent in Greenwood. Second, the dissent contends that changes in the content of garbage and in city ordinances relating to garbage disposal and container design have strengthened the expectation of privacy with respect to garbage. Third, a number of other state courts have interpreted their state constitutions to provide greater protection than the Fourth Amendment to the United States Constitution in the context of a warrantless search of garbage set out for collection in an area accessible to the public. For the reasons that follow, we are not persuaded by the dissent’s analysis.
In his Greenwood dissent, Justice Brennan argued that all Americans retain a reasonable expectation of privacy in garbage set out for collection because “[a] single bag of trash testifies eloquently to the eating, reading and recreational habits of the person who produced it.” 486 U.S. at 50, 108 S.Ct. 1625 (Brennan, J., dissenting). He equated a search of trash with a search of a bedroom or desk drawers because it “can relate intimate details about sexual practices, health, and personal hygiene” as well as a person’s “financial and professional status, political affiliations and inclinations, private thoughts, personal relationships, and romantic interests.” Id. Justice Brennan also emphasized:
[M]any municipalities, whether for reasons of privacy, sanitation, or both, reinforce confidence on the integrity of sealed trash containers by ‘prohibiting] anyone, except authorized employees of the Town ..., to rummage into, pick up, collect, move or otherwise interfere with articles or materials placed on ... any public street for collection.’
Id. at 52, 108 S.Ct. 1625 (alteration in original) (quoting United States v. Dzialak, 441 F.2d 212, 215 (2d Cir.1971)). He further emphasized that many “county ordinance[s] command! ]” that a person set his or her garbage out on the curb, and therefore the act of placing garbage on the curb does not “amount to a relinquishment of a privacy expectation in it.” Id. at 54-55, 108 S.Ct. 1625.
The dissent’s analysis mirrors Justice Brennan’s analysis. For example, the dissent contends that “[h]ousehold waste contains a great deal of personal information that most of us expect will remain private.” Infra at 697. The dissent also contends that municipal ordinances that prohibit the scavenging of recyclable materials and regulate the collection of garbage support the reasonableness of an expectation that household garbage will remain private from unwarranted inspection by the government. Infra at 698-99. In effect, the dissent contends that Article I, Section 10, of the Minnesota Constitution should be interpreted to require greater protection than the Fourth Amendment because it finds the arguments of the dissent in Greenwood to be persuasive. However, *694 under the well-established principles articulated in Kahn, we do not construe the Minnesota Constitution to provide greater protection “merely because we want to bring about a different result.” Kahn, 701 N.W.2d at 824.
The dissent next argues that today’s garbage is “not your grandfather’s garbage” because “[vjastly more household waste is being recycled” and garbage “may now contain digital material such as disks, chips, and flash drives.” Infra at 697-98. Because the introduction of digital media has been accompanied by corresponding changes in the way we dispose of sensitive items and information,[7] we are unpersuaded by the dissent’s argument. If, as the dissent contends, the nature of household waste has changed, as well as the “dented metal garbage cans” that were once set out at the curb, infra at 699, so too have Minnesotans’ disposal habits. A misplaced bank statement, an improperly discarded hard drive, or poor judgment when interacting with others via social media leaves an individual vulnerable to consequences ranging from embarrassment to identity theft and fraud. We do not minimize that certain negative consequences have arisen from technological developments, but we also consider the practical reality when determining whether changed circumstances justify a change in the law. Minnesotans are well aware of potential threats to their privacy 'and security and have prudently altered their conduct in response.
. Finally, the dissent cites to a handful of state supreme courts, each relying on its state constitution, that have concluded that people have a reasonable expectation of privacy in the garbage they set out for collection. See, e.g., State v. Goss, 150 N.H. 46, 834 A.2d 316 (2003); State v. Hempele, 120 N.J. 182, 576 A.2d 793 (1990); State v. Morris, 165 Vt. 111, 680 A.2d 90 (1996). But the courts of New Hampshire, New Jersey, and Vermont have not, as we have, determined that they will depart from Fourth Amendment precedent only in the limited situations that are not present here. See Kahn, 701 N.W.2d at 825 (“Generally, we do not independently apply our state constitution absent language, concerns, and traditions unique to Minnesota.”) To the contrary, the Morris court emphasized its freedom to depart from Supreme Court precedent: “We are a sovereign state, and this Court is entitled to take issue with any constitutional decision of the United States Supreme Court, regardless of whether our constitution provides the same or a different text.” Morris, 680 A.2d at 101 (emphasis added). Because the courts in Goss, Hempele, and Morris were not constrained by the principles articulated in Kahn, 701 N.W.2d at 824, the dissent’s reliance on those eases is misplaced.
III.
Having concluded there is no principled basis to interpret Article I, Section 10, of the Minnesota Constitution to afford greater protection against warrant-less searches of garbage set out for collection than the Fourth Amendment to the United States Constitution, we review the search of McMurray’s garbage in accordance with Greenwood, 486 U.S. 35, 108 S.Ct. 1625, and Oquist, 327 N.W.2d 587. *695 Under Greenwood and Oquist, a person has no reasonable expectation of privacy in garbage set out for collection on the side of a public street because such garbage is readily accessible to scavengers and other members of the public. Here, McMurray left the garbage at the curb outside his home with the expectation that the garbage collector would take it. Any member of the public could have accessed McMur-ray’s garbage without trespassing on his property, and police do not need a warrant to search items that are exposed to the public.[8] Because a police officer could have taken the garbage from the curb directly, it was lawful for Officer Erland-son to obtain McMurray’s garbage from the garbage collector. The warrantless search of McMurray’s garbage, therefore, was reasonable under both the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution. Because we conclude that the search of McMurray’s garbage was reasonable under the state and federal constitutions, the search warrant for McMurray’s residence that police subsequently obtained based on evidence found in the garbage was valid. Therefore, the district court properly denied McMurray’s motion to suppress evidence collected during the search of his residence.
Affirmed.
ANDERSON, J., took no part in the consideration or decision of this case.

. We have said that Article I, Section 10, and the Fourth Amendment are "textually identical,” State v. Carter, 697 N.W.2d 199, 209 (Minn.2005), although there are some differences in punctuation between the two provisions.

. The dissent’s discussion of the reasonable articulable suspicion standard is ill conceived for at least two reasons. First, application of this legal standard was not raised below and, therefore, is not properly before us. It is well settled that "[a] reviewing court must generally consider 'only those issues that the record shows were presented and considered by the trial court in deciding the matter before it."' Thiele v. Stich, 425 N.W.2d 580, 582 (Minn.1988) (quoting Thayer v. Am. Fin. Advisers, Inc., 322 N.W.2d 599, 604 (Minn.1982)). A party may not "obtain review by raising the same general issue litigated below but under a different theory.” Id. at 582. Second, neither party has advocated that we adopt the reasonable articulable suspicion standard, which only a minority of states have adopted. Prudently, we decline to offer an opinion on a matter that was not properly raised or litigated below.

.In the nearly 30 years since the United States Supreme Court decided Greenwood, most state supreme courts that have addressed the issue have followed the reasoning of Greenwood when interpreting their state constitutions. See, e.g., Rikard v. State, 354 Ark. 345, 123 S.W.3d 114, 119-20 (2003); People v. Hillman, 834 P.2d 1271, 1277-78 (Colo.1992); State v. DeFusco, 224 Conn. 627, 620 A.2d 746, 751-53 (1993); State v. Donato, 135 Idaho 469, 20 P.3d 5, 10 (2001); State v. Kimberlin, 267 Kan. 659, 984 P.2d 141, 145-46 (1999); Commonwealth v. Pratt, 407 Mass. 647, 555 N.E.2d 559, 567-68 (1990); State v. Schmalz, 744 N.W.2d 734, 741-42 (N.D.2008); Barekman v. State, 200 P.3d 802, 806-07 (Wyo.2009). These courts generally have agreed with the United States Supreme Court that people knowingly expose their garbage to *690 the public when they set it out for collection. See, e.g., Rikard, 123 S.W.3d at 119-20; Pratt, 555 N.E.2d at 567. The rationale in these cases is that, once garbáge has been set at the curb, it is in an area accessible to the public, which defeats any expectation of privacy that might have existed. There can be no expectation of privacy in that which is plainly visible to the public. Hillman, 834 P.2d at 1277. Furthermore, it is widely known that scavengers and animals often rummage through garbage, and the fact that other people are known to look through trash placed at the curb defeats any expectation that the police will refrain from doing so. See DeFusco, 620 A.2d at 752. Some courts also have suggested that garbage set out for collection is abandoned, asserting that “the defendant can be said to have abandoned his privacy interests in his garbage through the placement of his trash bags at the curb for collection.” Pratt, 555 N.E.2d at 567; see also State v. A Blue in Color, 1993 Chevrolet Pickup, 328 Mont. 10, 116 P.3d 800, 804 (2005).

. The United States Supreme Court recently clarified that "[t]he Katz reasonable-expectations test ‘has been added to, not substituted for the traditional property-based understanding of the Fourth Amendment.” Florida v. Jardines, - U.S. -, 133 S.Ct. 1409, 1417, 185 L.Ed.2d 495 (2013) (quoting United States v. Jones, - U.S. -, 132 S.Ct. 945, 952, 181 L.Ed.2d 911 (2012)). Because the police procured the garbage without trespassing on the curtilage of McMurray’s premises, the traditional property-based understanding of the Fourth Amendment is not at issue in this case.

. We are mindful that the United States Supreme Court’s recent decisions reflect an expansion of, rather than a retrenchment on, the protection against warrantless searches. See, e.g., Jones, -U.S. -, 132 S.Ct. 945 (holding that attaching a GPS device to a vehicle and using the device to monitor the vehicle’s movements on public streets is a search within the meaning of the Fourth Amendment).

. One commentator has argued that, since the United States Supreme Court announced the so-called container doctrine in the 1970s, it has eroded the protections of that doctrine by expanding the circumstances in which law enforcement may search a closed container without a warrant. See Cynthia Lee, Package Bombs, Footlockers, and Laptops: What the Disappearing Container Doctrine Can Tell Us About the Fourth Amendment, 100 J. Crim. L. & Criminology 1403 (2010). The commentator, however, does not include Greenwood in her discussion of that erosion, much less describe Greenwood as a "retrenchment” on the protections against warrantless searches.

. There are many resources available to individuals that explain how to protect their privacy. See, e.g., Office of Minnesota Attorney General Lori Swanson, Guarding Your Privacy (2013), available at http://www.ag.state.mn.us/ brochures/pubGuardingYourPrivacy.pdf; Consumer Information: How to Keep Your Personal Information Secure, Fed. Trade Commission (July 2012), http://www.consumer.ftc. gov/articles/0272-how-keep-your-personal-informationsecure.

. Some courts have rejected warrantless searches of garbage seized by police from within the curtilage. See, e.g., Commonwealth v. Ousley, 393 S.W.3d 15, 25-26 (Ky.2013) (distinguishing Greenwood because it did not deal with garbage within the curtilage). And we previously have emphasized that police may not trespass to search a person’s garbage. See Oquist, 327 N.W.2d at 591. But here, the garbage was on the curb — not within the cur-tilage — and police could have accessed the garbage directly without trespassing on McMurray’s property. The parade of overreaching investigative activities that the dissent invites us to rely on to decide this case is not presented here. We do not supply opinions in anticipation of unsubstantiated predictions of future law enforcement conduct. See State v. Colsch, 284 N.W.2d 839, 842 (Minn.1979).