**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1795**

In re the Application for an Administrative Search Warrant,
City of Golden Valley, petitioner,
Appellant,
vs.

Jason Wiebesick,
Respondent,

Jacki Wiebesick,
Respondent,

Jessie Treseler,
Respondent,

Tiffani Simons,
Respondent.

**Filed June 13, 2016
Reversed and remanded
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CV-15-15657

Ashleigh M. Leitch, Allen D. Barnard, Thomas G. Garry, Best & Flanagan LLP, Minneapolis, Minnesota (for appellant City of Golden Valley)

Anthony B. Sanders, Meagan A. Forbes, Lee U. McGrath, Institute for Justice, Minneapolis, Minnesota (for respondents)

Teresa J. Nelson, St. Paul, Minnesota (for amicus curiae American Civil Liberties Union of Minnesota)

Bennett Evan Cooper (pro hac vice), Steptoe & Johnson LLP, Phoenix, Arizona; and

William K. Forbes, Trepanier MacGillis Battina P.A., Minneapolis, Minnesota (for amicus curiae Center of the American Experiment)

Jessica Mikkelson, Minneapolis, Minnesota (for amicus curiae HOME Line)

Susan L. Naughton, St. Paul, Minnesota (for amicus curiae League of Minnesota Cities)

Considered and decided by Halbrooks, Presiding Judge; Hooten, Judge; and Jesson, Judge.

## S Y L L A B U S

Because there is no principled basis for interpreting article I, section 10 of the Minnesota Constitution to provide greater protection than the Fourth Amendment to the United States Constitution in the context of rental-housing inspections, an administrative search warrant to conduct such an inspection need not be supported by individualized suspicion of a code violation in the rental unit to be inspected.

## O P I N I O N

**HALBROOKS**, Judge

Appellant city challenges the district court's denial of its application for an administrative search warrant to conduct a rental-housing inspection, arguing that the district court erred in determining that individualized suspicion of a code violation is required. Because we are not left with a "clear and strong conviction" that there is a principled basis for interpreting article I, section 10, of the Minnesota Constitution to provide greater protection than the Fourth Amendment to the United States Constitution in this context, we reverse and remand.

**FACTS**

Appellant City of Golden Valley has enacted a city code that establishes minimum standards for rental housing and requires licenses for all rental dwellings. Golden Valley, Minn., City Code §§ 4.60, 6.29 (2015). The purpose of the code is to safeguard life, limb, health, property, and public welfare. *Id.* at § 6.29. To ensure compliance with the code, the city inspects all rental dwelling units every three years.

Respondents Jason and Jacki Wiebesick (landlords) own a rental unit in Golden Valley, in which respondents Tiffani Simons and Jessie Treseler (tenants) reside. In April 2015, landlords applied to renew their rental license. The city granted the renewal license, instructing landlords to call the city to schedule their triennial inspection and to give tenants at least 24 hours' notice of the inspection.

Landlords and tenants refused to consent to an inspection, and the city petitioned the district court for an administrative search warrant to inspect the unit "to determine compliance with Golden Valley City Code § 4.60." The district court held a hearing, which neither landlords nor tenants attended. The city acknowledged at the hearing that it had no individualized suspicion of a code violation in the rental unit. Relying on the supreme court's decisions in *McCaughtry v. City of Red Wing*, 831 N.W.2d 518 (Minn. 2013), and *Ascher v. Comm'r of Pub. Safety*, 519 N.W.2d 183 (Minn. 1994), the district court concluded that individualized suspicion of a code violation is required for issuance of an administrative search warrant to conduct a rental-housing inspection, and denied the city's application.

The city now appeals.

3

**ISSUE**

Did the district court err in determining that issuance of an administrative search warrant to conduct a rental-housing inspection must be supported by individualized suspicion of a code violation in the unit to be inspected?

**ANALYSIS**

Appellant city argues that (1) the district court erred in interpreting *McCaughtry* to require individualized suspicion of a code violation and (2) there is no principled basis to depart from the United States Supreme Court's interpretation of the Fourth Amendment in *Camara v. Mun. Ct. of City & Cty. of San Francisco*, 387 U.S. 523, 538, 87 S. Ct. 1727, 1735-36 (1967). Whether the district court applied the correct legal standard presents a question of law subject to de novo review. *Am. Bank of St. Paul v. City of Minneapolis*, 802 N.W.2d 781, 785 (Minn. App. 2011). Constitutional interpretation presents a legal question, which appellate courts review de novo. *McCaughtry*, 831 N.W.2d at 521.

We first address the city's argument that the district court misapplied *McCaughtry*. In that decision, the supreme court considered a facial challenge to the constitutionality of the Red Wing rental-property inspection ordinance after Red Wing's application for an administrative search warrant was denied. *Id.* at 519-20. The supreme court did not reach the question whether individualized suspicion is required by the Minnesota Constitution, having determined that, even under appellants' interpretation, the Red Wing ordinance would not be unconstitutional in all its applications. *Id.* at 524-25. "[I]n a facial challenge to constitutionality, the challenger bears the heavy burden of proving that

4

the legislation is unconstitutional in all applications." *Minn. Voters All. v. City of Minneapolis*, 766 N.W.2d 683, 696 (Minn. 2009). The supreme court concluded that the ordinance "can be applied constitutionally, even under appellants' view of the law, because a district court may require individualized suspicion before issuing a warrant in a particular case." *McCaughtry*, 831 N.W.2d at 525. Thus, the facial challenge to the ordinance failed. *Id.*

*McCaughtry* concludes with a reiteration of the narrowness of its decision. "We need not decide the unsettled question of whether the Minnesota Constitution prohibits the issuance of an administrative warrant under the [city] ordinance absent some individualized suspicion of a housing code violation, and we express no opinion on whether appellants' argument could succeed on an as-applied basis." *Id.*

The district court here nevertheless inferred that "*McCaughtry* . . . appears to foreclose issuance of a search warrant" in the absence of individualized suspicion, reasoning that the supreme court declined to adopt the *Camara* standard when presented with the opportunity. But *McCaughtry* did not reach this question, having resolved the appeal on narrower grounds. 831 N.W.2d at 525. And as discussed below, if the supreme court had reached the question, the question would not be whether to adopt the federal standard, but whether there is a principled basis to reject it. *State v. McMurray*, 860 N.W.2d 686, 690 (Minn. 2015). To the extent that the district court concluded that *McCaughtry* requires individualized suspicion for issuance of an administrative search warrant to conduct a rental-housing inspection, we conclude that it did so in error.

5

Having determined that *McCaughtry* is not dispositive, we now turn to the question whether individualized suspicion of a code violation in the unit to be inspected is required. Both the United States Constitution and the Minnesota Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects" against "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. "'The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all circumstances of the particular governmental invasion of a citizen's personal security.'" *State v. Bartylla*, 755 N.W.2d 8, 15 (Minn. 2008) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09, 98 S. Ct. 330, 332 (1977)).

In 1967, the United States Supreme Court held in *Camara* that an administrative search warrant to conduct a housing inspection satisfies the Fourth Amendment

> if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (e.g., a multifamily apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling.

387 U.S. at 538, 87 S. Ct. at 1736. In establishing this standard, the Court recognized the tension between the privacy interests protected by the Fourth Amendment and the "unanimous agreement among those most familiar with this field that the only effective way to seek universal compliance with the minimum standards required by municipal codes is through routine periodic inspections of all structures." *Id.* at 535-36, 87 S. Ct. at 1734. The Court concluded that, "if a valid public interest justifies the intrusion

6

contemplated, then there is probable cause to issue a suitably restricted search warrant." *Id.* at 539, 87 S. Ct. at 1736. Here, the parties agree that *Camara* forecloses an argument that the Fourth Amendment to the United States Constitution requires individualized suspicion of a code violation.

Although the language of article I, section 10, of the Minnesota Constitution is materially identical to the language of the Fourth Amendment, landlords and tenants advocate for broader interpretation of our state constitution. As a separate source of rights, the Minnesota Constitution may provide greater protection than the United States Constitution. *Kahn v. Griffin*, 701 N.W.2d 815, 824 (Minn. 2005). But Minnesota courts do not reject a United States Supreme Court interpretation of identical or substantively similar language "merely because one prefers the opposite result." *Women of the State of Minn. by Doe v. Gomez*, 542 N.W.2d 17, 30 (Minn. 1995) (quotation omitted). Where, as here, the state and federal constitutional provisions are "materially identical," a court must have a "'clear and strong conviction' that there is a 'principled basis'" to construe the Minnesota Constitution as granting greater protection for individual rights. *McMurray*, 860 N.W.2d at 690-91.

In determining whether there is a principled basis for interpreting article I, section 10, of the Minnesota Constitution to require greater protection than the Fourth Amendment, Minnesota courts apply the principles articulated in *Kahn v. Griffin*. *Id.* at 690. Applying the *Kahn* principles to materially identical provisions, our supreme court has construed the Minnesota Constitution to provide greater protection than the United States Constitution:

(1) when the United States Supreme Court "has made a sharp or radical departure from its previous decisions" and we "discern no persuasive reason to follow such a departure"; (2) when the Court has "retrenched on a Bill of Rights issue"; or (3) when the Court precedent "does not adequately protect our citizens" basic rights and liberties.

*Id.* (quoting *Rew v. Bergstrom*, 845 N.W.2d 764, 795 (Minn. 2014)).

### Sharp or Radical Departure

The city contends that *Camara* does not represent a sharp or radical departure from Fourth Amendment precedent because reasonableness, on which its analysis rests, is the touchstone of the Fourth Amendment. We agree. Moreover, *Camara* overruled caselaw holding that rental-housing inspections could be performed without any showing of reasonableness or any judicial review. *Camara*, 387 U.S. at 527-28, 87 S. Ct. at 1730 (overruling *Frank v. Maryland*, 359 U.S. 360, 79 S. Ct. 804 (1959)). And the parties and amici here generally agree that in the nearly 50 years since *Camara* was decided, no state has rejected the *Camara* standard. In our view, *Camara* does not represent a "sharp or radical departure" from previous decisions.

### Retrenchment

With respect to retrenchment, "[t]he relevant inquiry . . . is not whether the United States Supreme Court has retrenched on Bill of Rights issues *generally* but whether it has retrenched on the specific Bill of Rights issue at hand." *McMurray*, 860 N.W.2d at 691-92. Because *Camara* established broader protections under the law in the context of housing inspections than existed under *Frank*, it does not represent or signal retrenchment on individual rights, however those rights are characterized.

8

**Adequate Protection**

The heart of the parties' disagreement is whether the *Camara* standard provides adequate protection for Minnesotans' basic rights and liberties. The "adequate protection" inquiry "requires more than a conviction that we would have decided the issue differently in the first instance." *Id.* at 692. Rather, this inquiry considers whether there is a "'unique, distinct, or peculiar issue[] of state and local concern' that requires protection." *Id.* (alteration in original) (quoting *Kahn*, 701 N.W.2d at 829).

No party or amicus has identified a unique, distinct, or peculiar issue of state and local concern that requires greater protection in rental-housing inspections. The city contends that Minnesota has no special traditions that are impacted by rental-housing inspections. Landlords and tenants counter that Minnesota has a unique tradition of protecting both the home and personal privacy generally, citing cases in which Minnesota courts have interpreted article I, section 10, of the Minnesota Constitution to provide greater protection than the Fourth Amendment in the context of warrantless searches for evidence of criminal activity. *E.g., State v. Carter*, 697 N.W.2d 199 (Minn. 2005); *In Re Welfare of B.R.K.*, 658 N.W.2d 565 (Minn. 2003); *State v. Larsen*, 650 N.W.2d 144 (Minn. 2002); *Ascher v. Comm'r of Pub. Safety*, 519 N.W.2d 183 (Minn. 1994). We are not persuaded that criminal cases are instructive in the housing-inspection context. The purpose, scope, and procedure of a rental-housing inspection is fundamentally different from that of a search for evidence of criminal activity. As a result, the balancing of the public's need for the search and the invasion it entails also differs.

In a rental-housing inspection, tenants generally receive advance notice of the search, which mitigates its intrusiveness to some degree. In 2012, the administrative search warrant issued for inspection of this rental unit required at least 24 hours' notice. Beyond the requirements of a search warrant itself, advance notice to tenants (whose privacy interests are most directly affected by an inspection) is required by statute. Minn. Stat. § 504B.211 (2014) (a landlord may only enter a rental unit for a reasonable business purpose and after making a good-faith effort to give reasonable notice to the tenant). Moreover, the target of the search in a rental-housing inspection is the building itself, not the personal belongings of the inhabitants. Thus, the invasion of privacy is more limited in a rental-housing inspection than in a search for evidence of criminal activity.

On the other side of the balancing test, the need for routine housing inspections is great because the detection of certain dangerous living conditions cannot be accomplished effectively through any other means. Unlike drunk driving, which can often be detected through non-intrusive observation, *Ascher*, 519 N.W.2d at 185-86, there are no exterior canvassing techniques that will reveal code violations such as faulty wiring or inoperative smoke detectors. And for a variety of reasons, such as a lack of familiarity with code requirements and fear of retaliation, tenants are not well-situated to report code violations to the city.

In *Camara*, the United States Supreme Court recognized that, although citizens have the right to expect privacy in their homes, this right must be balanced against the city's interest in preventing "even the unintentional development of conditions which are hazardous to public health and safety." 387 U.S. at 535, 87 S. Ct. at 1734. We are not

10

persuaded that a unique, distinct, or peculiar issue of state and local concern requires greater protection with respect to rental-housing inspections in Minnesota.

In sum, we conclude that *Camara* was not a sharp or radical departure from United States Supreme Court precedent, did not retrench on a Bill of Rights issue, and does not fail to adequately protect a unique, distinct, or peculiar issue of state and local concern. We therefore do not have a clear and strong conviction that there is a principled basis to interpret article I, section 10, of the Minnesota Constitution to require greater protection than the Fourth Amendment to the United States Constitution in the context of administrative search warrants to conduct rental-housing inspections.

## D E C I S I O N

The district court erred in concluding that individualized suspicion of a code violation is required for issuance of an administrative search warrant for a rental-housing inspection and in denying the city's application on this basis. We reverse and remand to the district court for consideration of the city's administrative search-warrant application under the standard established in *Camara*.

**Reversed and remanded.**

11