**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0428**

State of Minnesota,
Respondent,

vs.

Jennifer Marie Hansen,
Appellant.

**Filed March 18, 2024
Affirmed
Connolly, Judge**

Aitkin County District Court
File No. 01-CR-21-436

Keith Ellison, Attorney General, St. Paul, Minnesota; and

James P. Ratz, Aitkin County Attorney, Sebastian Mesa White, Assistant County Attorney, Aitkin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael McLaughlin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Reyes, Judge; and Florey, Judge.[*]

**SYLLABUS**

A police search of garbage set out for collection does not violate the Fourth Amendment to the United States Constitution or article I, section 10 of the Minnesota

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Constitution even if a local municipal ordinance prohibits the inspection or removal of items from a private waste receptacle.

## OPINION

**CONNOLLY**, Judge

In this direct appeal from the judgment of conviction, appellant challenges the denial of her motion to suppress evidence. She argues that (1) the warrantless search of her garbage by law enforcement violated federal and state constitutional protections against unreasonable searches and (2) the warrant violated statutory requirements for a nighttime search. We affirm.

## FACTS

On May 13, 2021, respondent State of Minnesota charged appellant Jennifer Marie Hansen with one count of third-degree controlled substance crime (methamphetamine in school zone), in violation of Minn. Stat. § 152.023, subd. 2(a)(6) (2020); two counts of fifth-degree controlled substance crime, in violation of Minn. Stat. § 152.025, subd. 2(1) (2020); and one count of possession of a hypodermic needle, in violation of Minn. Stat. § 151.50, subd. 1 (2020). The complaint alleged that police executed a search warrant at 11:54 p.m. on May 12 at Hansen's residence, which was located next to softball fields owned by the Aitkin School District. During the search of her residence, the police found hypodermic needles, a substance that field-tested positive for methamphetamine, and paper that field-tested positive for LSD.

Hansen moved to suppress the evidence derived from the search warrant because (1) the evidence supporting the warrant was seized in violation of the Fourth Amendment to the U.S. Constitution and article I, section 10 of the Minnesota Constitution, and (2) there was an insufficient basis for a nighttime warrant.

Following a contested omnibus hearing, the district court denied Hansen's motion to suppress. In its order, the district court found that the officer "removed two trash bags from the garbage can placed on the right of way outside of [Hansen's] home" and used information from the trash bags to apply for a nighttime search warrant of Hansen's home. The district court determined that Hansen did not have a reasonable expectation of privacy in her garbage set out for collection and rejected Hansen's argument that law enforcement trespassed by searching her waste container in violation of an Aitkin County ordinance. The district court also determined that, "[b]ecause of the residence's close proximity to school grounds, public safety was best served by executing the warrant during nighttime hours when children would not be present" and therefore a nighttime warrant was justified.

The district court found Hansen guilty of all four counts following a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 3. The district court convicted Hansen of misdemeanor possession of a hypodermic needle, dismissed the two fifth-degree controlled-substance-crime charges, and imposed a statutory stay of adjudication for the third-degree controlled substance crime.

Hansen appeals.[1]

---

[1] Following oral argument, we requested supplemental briefing addressing, among other issues, whether a local ordinance can affect the scope of the protections under the Fourth

**ISSUES**

I.    Did law enforcement's warrantless search of Hansen's garbage, which was placed on the public right of way, violate the Fourth Amendment or article I, section 10 of the Minnesota Constitution?

II.   Did the search warrant for Hansen's home violate the statutory requirements for a nighttime warrant?

**ANALYSIS**

Hansen argues that the district court erred by denying her motion to suppress evidence obtained from the warranted search of her residence. She contends that the evidence to support the search warrant was obtained in violation of her constitutional rights under the Fourth Amendment to the United States Constitution and article I, section 10 of the Minnesota Constitution. In the alternative, she argues that the warrant application did not establish reasonable suspicion to justify a nighttime search.

When reviewing a district court's decision on a pretrial motion to suppress evidence, we review the district court's factual findings for clear error and its legal determinations de novo. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). We address Hansen's arguments in turn.

**I.    The police did not violate the Fourth Amendment or article I, section 10 of the Minnesota Constitution by searching Hansen's garbage.**

Both the United States and Minnesota Constitutions protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Although

_____

Amendment and article I, section 10 of the Minnesota Constitution. The parties submitted briefing as directed.

warrantless searches are generally unreasonable, not all government conduct implicates these constitutional protections. *State v. Edstrom*, 916 N.W.2d 512, 517 (Minn. 2018). Rather, a search within the meaning of the Fourth Amendment occurs (1) "when the government intrudes upon a person's reasonable expectation of privacy" or (2) "when the government physically intrudes onto a constitutionally protected area." *Id.*

Hansen argues that law enforcement's warrantless inspection and removal of her garbage, which was placed on the public right of way, was an unreasonable search forbidden by the Fourth Amendment and article I, section 10. We disagree.

The United States Supreme Court and the Minnesota Supreme Court have held that law enforcement's warrantless search of garbage set out for collection does not violate federal or state constitutions. In *California v. Greenwood*, the United States Supreme Court concluded that an individual does not have a reasonable expectation of privacy in garbage left at the curb for collection and consequently held that the Fourth Amendment does not prohibit the warrantless search and seizure of such garbage. 486 U.S. 35, 40 (1988). And in *State v. McMurray*, the Minnesota Supreme Court concluded that there was no principled basis to recognize a greater expectation of privacy for garbage under the Minnesota Constitution. 860 N.W.2d 686, 693-94 (Minn. 2015). As a result, the Minnesota Supreme Court held that article I, section 10 of the Minnesota Constitution does not "afford greater protection against warrantless searches of garbage set out for collection than the Fourth Amendment to the United States Constitution." *Id.* at 694. Under

5

*Greenwood* and *McMurray*, the warrantless search of Hansen's garbage—which was placed on the public right of way—was not an unreasonable search.[2]

Hansen argues that, despite this binding precedent, the warrantless inspection and removal of her garbage by law enforcement is still unconstitutional under the property-rights theory of the Fourth Amendment revitalized in *United State v. Jones*, 565 U.S. 400 (2012). In *Jones*, the United States Supreme Court explained that the "reasonable-expectation-of-privacy test has been *added* to, not *substituted for*, the common-law trespassory test." 565 U.S. at 409. Hansen asserts that, even if she does not have a reasonable expectation of privacy in her garbage, her garbage qualifies as constitutionally protected "effects" or "papers" and thus the police engaged in a trespassory search. *See id.* at 404; *see also Florida v. Jardines*, 569 U.S. 1, 5 (2013) ("When the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." (quotations omitted)).

We see no basis for including a person's garbage, left outside for collection beyond the curtilage of a residence, within the "persons, houses, papers, and effects" protected by the Fourth Amendment. In *McMurray*, the Minnesota Supreme Court clarified that "the

---

[2] We reject Hansen's suggestion that the facts here are distinguishable from *Greenwood* and *McMurray* because, in those cases, the police took the garbage from the garbage collectors, while the police here took Hansen's garbage from her garbage can. *Greenwood* and *McMurray* hold that a defendant's reasonable expectation of privacy ends when the garbage is placed outside the curtilage for collection. *See Greenwood*, 486 U.S. at 40; *McMurray*, 860 N.W.2d at 694. It is therefore immaterial whether the garbage was in the garbage can or with the garbage collector at the time of the challenged police conduct.

traditional property-based understanding of the Fourth Amendment is not at issue" if "the police procured the garbage without trespassing on the curtilage of [the defendant's] premises." 860 N.W.2d at 691 n.4. That understanding—that garbage set out for collection is abandoned property unprotected by the Fourth Amendment—is consistent with Minnesota caselaw preceding *Greenwood*. *See, e.g.*, *State v. Krech*, 403 N.W.2d 634, 636 (Minn. 1987) (explaining that boxes and bags placed in a garbage can behind a duplex were "abandoned property in which defendant no longer had a reasonable expectation of privacy"); *State v. Dreyer*, 345 N.W.2d 249, 250 (Minn. 1984) (affirming warrantless "search of garbage which had been placed on the curb for routine collection"); *State v. Oquist*, 327 N.W.2d 587, 591 (Minn. 1982) (concluding that "the examination of the garbage, which was procured without trespassing on the defendant's premises, was lawful").

We are also unpersuaded by Hansen's reliance on Aitkin County ordinances governing solid waste.[3] The premise of Hansen's argument is that local ordinances may enlarge the constitutional protections under the Fourth Amendment or provide a basis to read article I, section 10's protections for garbage more broadly than the Fourth Amendment. Both *Greenwood* and *McMurray* reject that premise, and Hansen identifies

---

[3] These ordinances provide, as relevant to Hansen's argument, that title to nonhazardous solid waste remains with the generator and that it is illegal to inspect or remove the contents of another person's waste receptacle without prior authorization. Aitkin County, Minn., Solid Waste Ordinances Art. IV, §§ 2.03(C), 3.08(D) (2019). There is no exception in the ordinance for law enforcement.

no contrary authority.[4]  In *Greenwood*, the United States Supreme Court rejected the argument "that concepts of privacy under the laws of each State are to determine the reach of the Fourth Amendment." 486 U.S. at 43-44.  *Greenwood* underscored that the reasonableness of a search under the Fourth Amendment does not "depend[] on the law of the particular State in which the search occurs"; instead, "the Fourth Amendment analysis must turn on such factors as our societal understanding that certain areas deserve the most scrupulous protection from government invasion." *Id.* at 43 (quotation omitted).  And in *McMurray*, the Minnesota Supreme Court considered, but rejected, the contention that "changes in the content of garbage and in city ordinances relating to garbage disposal and container design" require article I, section 10 to be interpreted more broadly than the Fourth Amendment.  860 N.W.2d at 693.  Accordingly, local ordinances, regardless of their character, cannot enlarge the protections of the Fourth Amendment or article I, section 10 of the Minnesota Constitution against searches by law enforcement.  If that were the case, an individual's constitutional rights under the Fourth Amendment and article I, section 10 would depend on what county the individual resides in.

---

[4] Hansen directs this court to the Iowa Supreme Court's decision in *State v. Wright*, which held that the warrantless removal of trash bags set out for collection qualified as an unreasonable search and seizure under the Iowa Constitution.  961 N.W.2d 396, 420 (Iowa 2021).  In its analysis, the Iowa Supreme Court considered local ordinances to determine whether garbage set out for collection qualified as an "effect" protected by the Iowa Constitution. *Id.* at 415.  But Iowa courts have a different jurisprudential approach to the interpretation of the Iowa Constitution, which underscores the duty of "independent interpretation" and that "[f]ederal constitutional law is not a framework." *Id.* at 403.  By contrast, our supreme court will depart from Fourth Amendment precedent only in "limited situations" and has declined to do so in this context. *McMurray*, 860 N.W.2d at 694.  We therefore do not find *Wright*'s analysis persuasive.

8

In sum, even if we assume, without deciding, that Hansen retained title to her garbage and that the police violated the county ordinances by inspecting and removing Hansen's garbage, those ordinances do not alter federal or state constitutional prohibitions against unreasonable searches and seizures. We therefore hold that a police search of garbage set out for collection is not a violation of the Fourth Amendment to the United States Constitution or article I, section 10 of the Minnesota Constitution even if a municipal ordinance prohibits the inspection or removal of items from a private waste receptacle. As a result, the warrantless search of Hansen's garbage, which was placed on the public right of way, did not violate the Fourth Amendment to the United States Constitution or article I, section 10 of the Minnesota Constitution, and the district court did not err by denying Hansen's motion to suppress on this basis.

**II.    The warrant application establishes the reasonable suspicion required for a nighttime search.**

In the alternative, Hansen argues that the search warrant application did not justify a nighttime search because it contained only "boilerplate language."

Minn. Stat. § 626.14 (2022) provides that:

> A search warrant may be served only between the hours of 7:00 a.m. and 8:00 p.m. unless the court determines on the basis of facts stated in the affidavits that a nighttime search outside those hours is necessary to prevent the loss, destruction, or removal of the objects of the search or to protect the searchers or the public.

Minn. Stat. § 626.14, subd. 1. "[A]n application for a nighttime warrant under section 626.14 must establish reasonable suspicion that a nighttime search is necessary to preserve evidence or to protect officer or public safety." *State v. Jackson*, 742 N.W.2d

9

163, 167-68 (Minn. 2007). "[W]e give great deference to the issuing judge's determination of probable cause for a search warrant," including "whether a nighttime search warrant should be authorized under Minn. Stat. § 626.14." *State v. Bourke*, 718 N.W.2d 922, 927-28 (Minn. 2006) (quotation omitted). "The issuing judge's determination must be based on the factual allegations contained in the affidavit in support of the warrant application and the reasonable inferences to be drawn therefrom." *Id.* at 928 (quotation omitted).

Hansen is correct that the section of the application explaining the need for a nighttime warrant does not use particularized language and that "boilerplate language" may be insufficient under the reasonable-suspicion standard. *See id.* But the search warrant application for Hansen's residence includes more than just boilerplate language to justify a search. *See id.* The application alleges that Hansen's residence was "directly adjacent" to a school district's tennis court and softball fields, and that a man with active warrants for his arrest, as well as an order for protection, was at her residence. We agree with the district court that it is reasonable to infer, based on the proximity of Hansen's home to the school grounds, "that public safety was best served by executing the warrant during nighttime hours when children would not be present." Given the allegations and reasonable inferences from the application, as well as our deferential standard of review, we conclude that the state met its burden to show there was a reasonable suspicion that a nighttime search of Hansen's residence was necessary under Minn. Stat. § 626.14 to protect public safety. The district court did not err by denying the motion to suppress on this basis.

**DECISION**

Because the warrantless search of Hansen's garbage did not violate the Fourth Amendment to the United States Constitution or article I, section 10 of the Minnesota Constitution despite the existence of a local municipal ordinance prohibiting the inspection and removal of items from a private waste receptacle, and the nighttime warrant was supported by reasonable suspicion, the district court did not err in denying Hansen's motion to suppress evidence from her residence.

**Affirmed.**