*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2107**

State of Minnesota,
Respondent,

vs.

William Joseph Rurup,
Appellant.

**Filed December 7, 2015
Affirmed
Chutich, Judge**

McLeod County District Court
File No. 43-CR-14-530

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael K. Junge, McLeod County Attorney, Daniel R. Provencher, Assistant McLeod County Attorney, Glencoe, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant William Rurup appeals his conviction of second-degree possession of a controlled substance and challenges the district court's denial of his pre-trial motion to

suppress evidence. Rurup argues that the state failed to carry its burden to show that the garbage container seized and searched by police was not within the curtilage of his home and, without mention of this illegally seized evidence, the resulting search warrant affidavit did not provide probable cause to believe that contraband would be found in his home. Because we conclude that Rurup failed to meet the threshold burden of demonstrating a reasonable expectation of privacy in garbage set out for collection, we affirm his conviction.

## FACTS

In April 2014, officers with the Hutchinson Police Department sought a warrant to search Rurup's home. Officer McLain, the officer who sought the warrant, reported in his affidavit that he received information about possible drug activity involving a person known as "Cowboy," whom he knew to be Rurup. Rurup lives in a trailer court that is privately owned but has paved roads that are accessible to the public and are patrolled by the police.

Before seeking the warrant, Officer McLain rode with a confidential source to Rurup's home and "observed that the trash receptacle was placed on the curb for pick up." The officer took the trash back to the Hutchinson Police Department, examined it, and found the following: (1) one piece of mail addressed to William Rurup, (2) two drug notes, (3) an empty butane canister, (4) a broken glass pipe with white residue, and (5) a small plastic ziplock baggie with white residue. The officer tested the residue in the glass pipe and the plastic baggie and found that they contained methamphetamine. On that evidence, Officer McLain applied for and obtained a search warrant.

2

Officer McLain executed the search warrant. Officer McLain read Rurup his *Miranda* rights and asked him if he would give a statement. Rurup agreed and admitted that there was methamphetamine locked in a safe upstairs. Officer McLain opened the safe and found, among other things, plastic baggies containing a substance that was later tested and determined to be methamphetamine and a large bag of marijuana. Based on this evidence, the state charged Rurup with second-degree possession of a controlled substance, methamphetamine. *See* Minn. Stat. § 152.022, subd. 2(a)(1)(2014).

At a contested omnibus hearing, Rurup moved to suppress the narcotics evidence asserting that the warrantless seizure and later search of his garbage was unconstitutional. Rurup contended that the officers needed to leave the paved street and walk onto his private property to obtain the garbage bags.

The district court denied Rurup's motion to suppress, finding that the garbage can was located "at the edge of [Rurup's] property near the curb of a street that is accessible to the public." It concluded that because "the garbage receptacle was awaiting pickup while placed on the curb of a publicly accessible road, the defendant no longer had a legitimate expectation of privacy in its contents," and the search did not violate his constitutional rights.

Following the omnibus hearing, the parties agreed to hold a stipulated-facts trial. *See* Minn. R. Crim. P. 26.01, subd. 3. The district court convicted Rurup of second-degree possession of a controlled substance and imposed a sentence of 60 months. Rurup appeals.

3

**D E C I S I O N**

"When reviewing pretrial orders on motions to suppress evidence, we independently review the facts and determine, as a matter of law, whether the district court erred in its ruling." *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006) (citing *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999)). "The district court's factual findings are reviewed under the clearly erroneous standard, but we review the district court's legal determinations de novo." *Id.* (citing *State v. Wiernasz*, 584 N.W.2d 1, 3 (Minn. 1998)).

Rurup contends that the search warrant lacked probable cause because it was issued on the basis of information gathered in an illegal garbage search, which the issuing judge should not have considered. Accordingly, Rurup asserts that the warrant was invalid and that all evidence gathered following the warrant's execution must be suppressed and his conviction must be reversed. We disagree.

"A search warrant is supported by probable cause if there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Fort*, 768 N.W.2d 335, 342 (Minn. 2009) (quotation omitted). "Contraband seized from a garbage search can provide an independent and substantial basis for a probable-cause determination." *State v. McGrath*, 706 N.W.2d 532, 543 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006). But "an examination of garbage by the police is a search and is therefore subject to the constraints imposed by the Fourth Amendment." *State v. Oquist*, 327 N.W.2d 587, 590 (Minn. 1982).

The United States and Minnesota Constitutions protect the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

4

seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. "This constitutional protection extends to all places where an individual has a reasonable expectation of privacy, including the home and its curtilage." *Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 746 (Minn. App. 2004). An unlawful search or seizure under the Fourth Amendment occurs when an individual's reasonable expectation of privacy is invaded. *See Katz v. United States*, 389 U.S. 347, 353, 88 S. Ct. 507, 512 (1967). "Generally, evidence seized in violation of the constitution must be suppressed." *State v. Jackson*, 742 N.W.2d 163, 177–78 (Minn. 2007).

In *California v. Greenwood*, 486 U.S. 35, 108 S. Ct. 1625 (1988), the United States Supreme Court concluded that a warrantless search of garbage left at the curb does not violate the Fourth Amendment to the Constitution of the United States. *Id.* at 39–41, 108 S. Ct 1625, 1628–29. The Minnesota Supreme Court has explicitly addressed *California v. Greenwood* and held that article I, section 10, of the Minnesota Constitution does not provide any greater protections than the United States Constitution in this context. *State v. McMurray*, 860 N.W.2d 686, 690 (Minn. 2015).

While Minnesota courts recognize that "a householder may ordinarily have some expectation of privacy in the items he places in his garbage can," *Oquist*, 327 N.W.2d at 591, this expectation is eroded when garbage is placed at curbside for normal collection. *State v. Goebel*, 654 N.W.2d 700, 704 (Minn. App. 2002). Consistent with the United States Supreme Court's holding in *California v. Greenwood*, Minnesota courts have held that garbage set out for collection is not protected by the Fourth Amendment and may be searched without a warrant. *See, e.g.*, *McMurray*, 860 N.W.2d at 694–95 (finding no

5

reasonable expectation of privacy in garbage set out on the curb for collection); *State v. Krech*, 403 N.W.2d 634 (Minn. 1987) (finding no constitutional violation where garbage was left a few feet from an alley and seized and searched by police); *State v. Dreyer*, 345 N.W.2d 249 (Minn. 1984) (holding that police did not violate defendant's Fourth Amendment rights in seizing and searching three plastic bags full of garbage which defendant had put out for collection at the curb at the edge of his driveway); *Goebel*, 654 N.W.2d 700 (finding that garbage placed on the street for pickup was not protected by constitutional warrant requirements).

Rurup argues that he can still prevail under this caselaw for two reasons: (1) the state failed to carry its burden to establish that the search did not take place within the curtilage of his residence, and (2) this line of cases fails to take into account the property-rights theory of the Fourth Amendment revived by two recent United States Supreme Court cases. *See Florida v. Jardines*, 133 S. Ct. 1409 (2013); *United States v. Jones*, 132 S. Ct. 945 (2012). We do not find these arguments persuasive.

The crux of Rurup's appeal is that "the state did not carry its burden to show that the garbage was located outside the curtilage" so "the warrantless seizure and subsequent search were not authorized." Rurup asserts that "there is nothing in the record to explain the layout of [his] home, yard, and driveway or how the driveway and curb relate geographically to the home." Rurup maintains that because the state had the burden of proof, this deficiency in the record means that the state has not carried its burden and the evidence must be suppressed. For this proposition, Rurup relies solely on an unpublished decision of this court. *See State v. Boman*, No. A09-0061, 2009 WL 1921246 (Minn.

App. July 7, 2009). *Boman* is not precedential authority, however, *see* Minn. Stat. § 480A.08, subd. 3 (2014), and is factually distinguishable. Moreover, to the extent its analysis diverges from published Minnesota and United States Supreme Court caselaw, we must follow the published authorities. *See State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010) (stating that this court "is bound by supreme court precedent and the published opinions of the court of appeals").

The United States Supreme Court has held that "the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740, 99 S. Ct. 2577, 2580 (1979). Contrary to Rurup's assertion that the state has the burden of proof, the "proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130, 99 S. Ct. 421, 424 n.1 (1978); *see also State v. Davis*, 732 N.W.2d 173, 178 (Minn. 2007) (explaining that the defendant had the burden of showing that a dog sniff occurring in a common hallway violated his Fourth Amendment rights); *State v. Licari*, 659 N.W.2d 243, 249 (Minn. 2003) (explaining that a defendant must first establish a legitimate expectation of privacy in a storage unit before contesting its search). Once a reasonable expectation of privacy is established, then the state has the "burden of proving that at least one of the exceptions to the warrant requirement applies." *State v. Metz*, 422 N.W.2d 754, 756 (Minn. App. 1988).

We conclude, therefore, that Rurup misconstrues the burden of proof by neglecting to address the threshold question of whether his garbage fell under the protections of the Fourth Amendment. On that question, Rurup has the burden to prove that he had a reasonable expectation of privacy in his garbage. *See Licari*, 659 N.W.2d at 249.

A person has a constitutionally protected reasonable expectation of privacy in the curtilage of his or her residence. *Garza v. State*, 632 N.W.2d 633, 639 (Minn. 2001). The Minnesota Supreme Court has defined curtilage as the area around a residence that "harbors the intimate activity associated with the sanctity of a [person's] home and the privacies of life." *Krech*, 403 N.W.2d at 636 (quotations omitted). The purpose of the curtilage determination is to aid courts in deciding "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.* at 637 (quoting *United States v. Dunn,* 480 U.S. 294, 301, 107 S. Ct. 1134, 1140 (1987)).

Courts consider four factors in determining curtilage: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *Id.* at 636–37. Considering these factors in light of Rurup's burden of proof, we conclude that he has not carried his burden to demonstrate that the search took place within the curtilage of his home.

Although the district court did not explicitly analyze the *Krech* factors, the district court's findings are consistent with their application to the limited record. The first *Krech* factor directs the court to look at the proximity of the garbage cans to Rurup's home. The only information in the record regarding the placement of the garbage is from Officer McLain's affidavit and testimony. In his affidavit, Officer McLain states that "the trash receptacle was placed at the curb for pick up." At the contested omnibus hearing, Officer McLain admitted on cross-examination that he was not "100 percent sure" whether there was an actual curb, but he testified consistent with his affidavit that the garbage can had been set out for collection. We find that this factor weighs in favor of determining that the area was not curtilage.

No evidence addresses the three remaining *Krech* factors, which is why Rurup's argument turns on who has the burden of proof. Because Rurup has the burden of proof on the threshold question of whether he had a constitutionally protected interest in the area searched by the police, the paucity of the record weighs against him and in favor of a determination that the search did not occur within the residence's curtilage.

The district court found that the garbage can was located "at the edge of [Rurup's] property near the curb of a street that is accessible to the public." The district court found that "the paved street in front of the residence is not owned by the City of Hutchinson but is open to and commonly used by the public." From those findings of fact, the district court concluded that because "the garbage receptacle was awaiting pickup while placed on the curb of a publicly accessible road, the defendant no longer had a legitimate

9

expectation of privacy in its contents" and the search did not violate his constitutional rights.

The district court's factual finding is not clearly erroneous. Given Officer McLain's uncontroverted testimony that the garbage can was set out for collection, a reasonable inference arises that the can was outside the curtilage of the residence. We conclude that the district court did not err in determining that the garbage was not within the curtilage of the residence and therefore not within "the home's 'umbrella' of Fourth Amendment protection." *Id.* at 637.

Rurup maintains that he need not demonstrate a reasonable expectation of privacy in his garbage because another test is available under Fourth Amendment jurisprudence: the property-rights theory. In *United States v. Jones,* the Supreme Court discussed the property-rights theory that preceded the reasonable-expectation-of-privacy formulation in *Katz.* 132 S. Ct. at 950. The guiding principle of the property-rights theory is "that, when the Government . . . engage[s] in physical intrusion of a constitutionally protected area in order to obtain information, that intrusion may constitute a violation of the Fourth Amendment." *Id.* at 951 (quotation omitted); *see also Jardines*, 133 S. Ct. at 1414 (using property-rights analysis to determine that police officers violated the Fourth Amendment by physically entering and occupying the defendant's porch to gather information with a drug-sniffing dog).

Rurup argues that "[t]he property-rights analysis provides an independent basis to conclude that a search and seizure occurred" because the police "physically occupied [Rurup's] property for the purpose of obtaining information" in violation of *Jones* and

10

*Jardines*. Rurup argues that "[t]he question on appeal is not about [his] 'expectation of privacy' in the contents of the garbage bags, instead the question is one of *possible* trespass to retrieve the garbage bags."

Rurup's reliance on these cases is unavailing. Minnesota courts have clearly held that police may not trespass to search a person's garbage. *Oquist*, 327 N.W.2d at 591. If the only issue is possible trespass, then Rurup need not look to the property-rights theory; the reasonable-expectation-of-privacy approach followed by all of the Minnesota garbage-search cases can accommodate a challenge based on trespass. Accordingly, we conclude that the district court did not err in employing a reasonable-expectation-of-privacy analysis.

Finally, Rurup's argument that a possible trespass occurred lacks merit. This claim turns on the state having the burden of proof to establish that the garbage can was not in the curtilage of the residence. Because we have concluded that this assertion is incorrect, Rurup's argument fails. The district court found that the garbage can was on the curb, and that finding is not clearly erroneous. Officer McLain testified consistently that the trash was out for collection, from which the district court could reasonably infer that the trash was not placed such that a trash collector would have to trespass to gather it. Further, no evidence in the record suggests that Officer McLain trespassed to seize Rurup's trash. The district court's findings of fact are not clearly erroneous and should not be disturbed.

In sum, the warrantless seizure and later search of Rurup's garbage did not violate his Fourth Amendment rights and the information gathered in the search was properly

11

included in Officer McLain's affidavit. We conclude that the district court did not err in denying Rurup's suppression motion because the search warrant used to obtain the narcotics evidence was supported by probable cause. Accordingly, we affirm Rurup's conviction.

**Affirmed.**